## LEWIS v. COVILLAUD et al.

In a deed of land the consideration was expressed to be $10,000, $4,000 paid in cash, "and the balance by the assuming, on the part of the said grantees, the payment of a certain mortgage" then existing upon the property to secure the grantor's note for $6,000: *Held*, that this recital, unless controlled by evidence of a contrary intention, showed an agreement on the part of the grantees to pay the mortgage debt, and not merely to obtain a discharge of the mortgage as a lien upon the property.

The doctrine of *McLaren v. Hutchinson*, (18 Cal. 80) that where A owes B, and the latter owes C, and A and B, without consulting C, agree that the former shall pay to C what he is owing to B, an action cannot be maintained by C against A for want of privity—commented on and questioned.

A vendor's lien is not assignable. *Baum v. Grigsby (ante, 172)* affirmed on this point.

A finding of fact by the lower Court will not be disturbed by the appellate Court when the evidence is conflicting, or where the conclusion drawn from it is not necessarily erroneous in point of law.

Thus, where C. purchased a city lot of B., and as part of the consideration assumed the payment of a note from B. to L., secured by mortgage upon the property, and some time afterwards C. and L. entered into an arrangement by which C. executed his notes to L. for about three-fourths of the amount due on the original note, and to secure these latter notes gave a new mortgage upon the property, and L. thereupon delivered up the old mortgage, but not the note, and indorsed upon the record entry of the mortgage, " Satisfied by being released :" *Held*, that whether this was an accord and satisfaction of the whole debt, depended upon the intention of the parties, and that the Court below having, upon conflicting evidence in this respect, found as a fact that full satisfaction was not intended, its finding would not be disturbed, although the appellate Court might be of opinion that the weight of evidence was against the finding.

APPEAL from the Tenth Judicial District.

On the fourth day of September, 1850, S. J. Field conveyed by deed to Joel Burlingame a lot, with the improvements thereon, in the city of Marysville. On the seventh day of August, 1855, Burlingame executed a mortgage upon the premises to J. E. N. Lewis, the plaintiff, to secure a note in form as follows:

"$6,000. Twenty-four calendar months from date, for value received, (loaned money) I promise to pay to Joseph E. N. Lewis, or order, six thousand dollars, with the following monthly interest: for the first twelve months, two and one-half per cent. per month; for the balance of the time until paid, two per cent. per month. Interest to be paid monthly, and in default of such payment the same shall be added to the principal, and draw the same interest as principal. August seventh, A. D. one thousand eight hundred and fifty-five.                                   JOEL BURLINGAME."

Which mortgage was duly acknowledged and recorded.

On the twenty-first day of September, 1855, Joel Burlingame and his wife, Freelove Burlingame, executed to the defendants, Charles Covillaud and M. C. Nye, a warrantee deed of which the consideration clause is as follows: "In consideration of the sum of $10,000, received to their full satisfaction of Charles Covillaud and M. C. Nye, both of the same county and State aforesaid, grantees, to be paid as follows: $4,000 in cash down, and the balance by the assuming, on the part of the said grantees, the payment of a certain mortgage upon the property hereinafter described, made by the above described Joel Burlingame on the seventh day of August, one thousand eight hundred and fifty-five, in favor of one J. E. N. Lewis for the sum of $6,000." This deed contained no covenants on the part of the grantees, and no other recitals in reference to the consideration than the clause above set forth. The deed was duly acknowledged and recorded, and the $4,000 paid by the grantees. The first month's interest, which fell due after the making of this deed upon the $6,000 note of Lewis, was paid to Lewis by Covillaud, and no further payments were made by any one until in 1858, as hereafter stated. Oct. 8th, 1855, Nye by deed conveyed all his interest in the property to Covillaud, subject to the mortgage.

On the twenty-fifth day of September, 1857, Covillaud and Lewis entered into an arrangement for the release of the latter's mortgage, in pursuance of which Covillaud executed to Lewis two notes for $4,000 each, one payable in twelve, and the other twenty-four months from date, and both secured by a mortgage executed by C. upon the property; on the reception of which Lewis delivered to Covillaud the original mortgage from Burlingame, and indorsed upon the record of it a satisfaction in these words: "Satisfied by being released; Sept. 26th, 1855.    Jos. E. N. Lewis."    At the date of this transaction the amount due on the original note, principal and interest, was $10,312.    This note was not delivered to Covillaud with the mortgage, but remained in possession of Lewis, who at some time afterwards (when does not appear) indorsed upon it as a credit the $8,000 paid by the notes of C.    One of the $4,000 notes was paid by C. at maturity, and the other was not due when this suit was commenced, but appears also to have been since paid according to its terms.

On the twenty-seventh of March, 1858, Lewis commenced an action against Burlingame to recover the balance due upon the $6,000 note, after deducting as a payment the $8,000 for which Covillaud had given his notes.    Burlingame made default, and on the twelfth of February, 1859, judgment was rendered against him in favor of the plaintiff for $3,205, to bear interest at the rate of two per cent. per month.    No portion of this judgment has been paid.

On the twenty-second day of October, 1858, Joel Burlingame executed to Lewis an instrument in which, after reciting that Nye and Covillaud had neglected to comply with their agreement to pay off the $6,000 note, he, in consideration of one dollar, conveys to Lewis all his interest and rights in law or equity to the lot in question, and continues, "together with any and all right of action in law or equity against said Covillaud and Nye to enforce a specific performance of the contract of sale and purchase on their part, for the payment of said mortgage, according to their agreement with the undersigned, at the time that the writing was signed by the undersigned and Freelove Burlingame, his wife, for the property covered by said mortgage, and was delivered, thus executed, to the

said Covillaud and Nye, (the undersigned wife neither then nor at any other time having any interest in said property) and the said Lewis is hereby authorized and empowered in my name to institute any and all suits in law or equity against any and all persons as fully and completely as I myself could, had not this conveyance been given for his use and benefit, that may be necessary and proper to secure and recover the matters and things herein referred to, or that may be necessary or proper in carrying out the objects of this conveyance in securing the payment of said note and mortgage in full, and to the end that all moneys arising therefrom shall be applied in payment on said note and mortgage."

The present action was commenced on the twenty-first of March, 1859, by Lewis against Covillaud and Nye. The complaint sets forth substantially the facts above stated, and avers that at the time of the purchase by defendants of Burlingame they, as part of the consideration, assumed the payment of the note in favor of Lewis, and that such was the intention and effect of the consideration clause in the mortgage; and further avers, that the $8,000 paid by Covillaud in 1858 was for the purpose of obtaining a release of the mortgage, and was not, nor intended to be, a satisfaction of the debt; that plaintiff is entitled to recover the balance not paid upon the note, both by reason of the agreement on the part of defendants at the time of their purchase to pay the debt to plaintiff, and also by virtue of the assignment from Burlingame to plaintiff, and that under this assignment he is also entitled to enforce against the property the vendor's lien which existed in favor of Burlingame, and prays judgment accordingly.

The answer admits the execution of the several instruments, as alleged by plaintiff, but denies that defendants in their purchase from Burlingame agreed to assume the payment of the $6,000 note, or that such was the intention, or the effect of the recitals in the deed executed to them, and avers that their agreement in this respect only extended to procuring a satisfaction of the Lewis mortgage. It also avers that the transaction between plaintiff and defendants in 1858 was intended to be and was a full satisfaction of the original debt and note.

The case was tried by the Court without a jury. The plaintiff

called as a witness one Taylor, who testified that at the time Burlingame sold to defendants, witness had in his possession, as agent for Lewis, the latter's note against Burlingame; that Covillaud paid the month's interest upon it which fell due first after the purchase, and that when the second month's interest fell due he spoke to Covillaud about it, and C. said, that although he knew it was drawing compound interest, he preferred to let it run for a while as he was paying still higher rates of interest to other parties.

On behalf of defendants, W. W. Lawton testified, that at the request of the parties he drew the notes and mortgage from Covillaud to plaintiff in 1858, and also went with them to the Recorder's office, and was present when the satisfaction of the original mortgage was signed, and that he delivered that mortgage to defendants at request of Lewis; that during these transactions he heard a good deal of conversation between the parties about the matter; that he could not now recollect anything that was said, but that from all the talk it was his impression that the parties intended a settlement of all claims of Lewis against Covillaud, but that he did not understand or suppose at the time that plaintiff intended to release Burlingame from the payment of the balance of the note. Witness further stated, in answer to interrogatories by plaintiff, that it was probable (although his recollection was indistinct) that the original note and mortgage of Burlingame were attached together, and that when the mortgage was given up to Covillaud the note was torn from it and retained by Lewis.

The Court found as a fact, among others, that Covillaud and Nye, at the time of their purchase from Burlingame, assumed to pay the mortgage debt to plaintiff, and also that the transaction between plaintiff and Covillaud in 1857 did not amount to an accord and satisfaction of the entire debt. A judgment was rendered in favor of plaintiff for $4,160, being the amount of principal and interest due, after deducting the payments, upon the note made by Burlingame to plaintiff; and also decreed that plaintiff had a vendor's lien upon the property by virtue of his assignment from Burlingame, and that this lien should be enforced. Defendants moved for a new trial, which was denied, and from this order and the judgment they appeal.

*Mesick & Sweezey*, for Appellants.

I.   The recital in the deed from Burlingame to defendants, that the grantees are to assume the mortgage, is not binding on them as forming no part of the conveyance. (16 Johns. 49 ; 4 Cow. 429.) If there is any liability arising from such recital, no action can be maintained thereon except by the grantors. (*Brown* v. *Hunter*, 14 Cal. 31; *McLaren* v. *Hutchinson*, 18 Id. 80.)    Such action could not be maintained by Burlingame and wife until they had paid the mortgage.    (14 Barb. 201; 9 Page's Ch. 446.)

It is, if binding at all, a bare equitable obligation subjecting the land to the payment of the mortgage.    (3 Johns. 261, and cases ; 2 Brown Ch. 88.)    It may be enforced by the mortgagee by a foreclosure of the mortgage in equity, and not otherwise.    (2 Sand. Ch. 498 ; 2 Denio, 595 ; 2 Brown's Ch. 88 ; 9 Paige's Ch. 432 ; 16 How. Prac. 430.)

Here the mortgagee has released the premises.    Can he then proceed against the defendants as such grantees ?

As to Burlingame the clause in the deed can only operate as a covenant of indemnity, and as such he cannot sue thereon until he has paid the claim.    (14 Barb. 201 ; 9 Paige, 446 ; 2 Barb. 16.) Covillaud upon purchasing of Nye became solely liable.    (10 Paige, 595–597 ; 2 Denio, 595.)

II.   The settlement of defendant Covillaud with plaintiff was a full discharge and accord and satisfaction of all his and Nye's liabilities to plaintiff under the deed from Burlingame to Covillaud.    (2 Pars. on Cont. 193, 200, 139 and note * ; 6 Humph. 85 ; 3 Denio, 410 ; 7 Cow. 223 ; 14 Wend. 116.)

The accord and satisfaction was complete even if the full amount of interest was not included.    (5 Johns. 268.)    The delivery up to Covillaud of the mortgage is of itself a release and discharge. The question is, whether the terms of this agreement are ·to be extended to the mortgage debt assumed by Covillaud and Nye, or restricted to the mortgage itself as an incumbrance upon the property ?    It is certainly fair to assume that if an agreement on the part of defendants with the Burlingames to pay the mortgage is an agreement on their part to pay the mortgage debt, then an agree-

ment on the part of Lewis to satisfy this mortgage is an agreement to satisfy the mortgage debt.   Moreover, from the character of the transaction itself Covillaud must have understood that he was discharging, by his notes and mortgage, the obligation which he and Nye had assumed in respect to the Burlingame mortgage by the recitals in the deed to them.

The witness Lawton so understood it, and the discharge by Lewis written upon the mortgage, and the record " satisfied by being released," means the same thing.   The word " satisfied " can only apply to the mortgage and not to the property.   If he " satisfied " the mortgage, then the mortgage debt was satisfied.   The words " by being released " must refer to the mortgage as much as does the word " satisfied," and not to the property.   And as the defendants' assumption only extended by its terms to the payment of the mortgage and embraced the mortgage debt only by construction, so by the mortgage being released the release of the mortgage debt was effected.   This discharge is simply a satisfaction of the mortgage, and the use of the words " by being released " cannot qualify the effect of the word " satisfied," and they signify nothing in the connection, unless a special release had been executed by Lewis of the premises from the mortgage or of the mortgage debt, which was not done.   The release, then, was the result of the satisfaction, and the satisfaction not the result of the release.

The correctness of our theory is not affected by the fact, that the Burlingame note was found in the possession of Lewis after the transaction of the twenty-fifth and twenty-sixth of September, 1857. There is no evidence that Covillaud knew of its retention by Lewis ; none that by the terms of the arrangement Lewis was to retain it. There was evidence that the note had been pasted on the mortgage and torn away from it, but when, or by whom, does not appear. The proven and admitted understanding of Covillaud, as well as the nature of the transaction, is clearly inconsistent with a rightful retention of the note by Lewis ; and this being so the presumption was all in Covillaud's favor, and the onus was clearly on Lewis of rebutting that presumption and of showing affirmatively that it was agreed that he should keep the note as a subsisting obligation, and that he so kept it as a part of the arrangement with Covillaud.

Lewis v. Covillaud.

IV. The assignment from Burlingame to Lewis invested him with no rights by which he could maintain this suit. It was executed and delivered after the suit had been commenced by Lewis against Burlingame for the balance unpaid of the Burlingame note, and before judgment. This transfer purports to convey the interest which Burlingame had at the time of its execution in the mortgaged premises and the rents and profits, etc., but Burlingame at the time had no interest in them. It next purports to transfer Burlingame's right of action for the balance of the consideration money, but he had no claim for the balance of the consideration money over the $4,000 which was paid him. Nothing more was coming to him. His equivalent for the conveyance to Nye and Covillaud was that $4,000 paid to him, and a further implied covenant on their part that he should not suffer from his mortgage debt to Lewis. And until he had suffered from that debt there was no violation of their implied covenant with him in respect to that debt. He must have paid something before he had a right of action against Covillaud and Nye. (*Halsey* v. *Reed*, 9 Paige, 451, 452.)

V. A vendor's lien is not assignable—there is some conflict in the authorities but the preponderance is against their assignability. (*Pollexfen* v. *Moore*, 3 Ark. 272; *Jackson* v. *Halleck et al.*, 1 Ohio, 318; *Tierinan* v. *Beam*, 2 Id. 306; *Bush & Stansbury* v. *Rensley*, *Adams et al.*, 14 Id. 20–27; 5 Yerg. 295, 215; Leading Cases in Eq., Hare & Wallace's Notes, vol. 1, and cases there cited; *Webb* v. *Robinson*, 14 Geo. 216; *Welburn* v. *Williams*, 9 Id. 86; *Green* v. *Desmoss*, 10 Humph. [1 Geo.] 165; 7 Yerg. 9, 13; 6 How. Miss. 362; Devereux & Battle's Eq. 390–392; 1 Paige's Ch. 502; 1 Freeman's Ch. 574, 584; *Shall* v. *Biscoe*, 18 Ark. 142.)

*Robinson & Beatty*, for Respondent, and *J. E. N. Lewis in pro. per.*

I. That defendant first assumed to pay the mortgage debt to plaintiff is shown by the recital in their deed, and by the context and the subject of the agreement. Burlingame was selling his lot for $10,000. He received $4,000 down, and agreed to let the other $6,000 go to pay his debt to Lewis. He was interested in paying

13

this debt.   If not paid, he was personally liable to Lewis.   After sale of the property to Covillaud and Nye, he had no interest in releasing the mortgage.   The question to be determined here is, whether Burlingame appropriated $6,000 of his money to pay his own debt, or appropriated that amount to procure the release of a mortgage in which he had no interest.   It is only necessary to determine that Burlingame was a sane man, and not an idiot or a lunatic, to determine that he appropriated his own money to pay his own debt.

II.   What was the nature of the agreement made between Covillaud and Lewis in 1857, when Covillaud paid Lewis the $8,000 ? Did Covillaud, by that transaction, do what Covillaud and Nye had promised to do—that is, did he pay the debt to Lewis, and thereby relieve Burlingame from responsibility, as under his contract with Burlingame, he and Nye were bound to do, or did he, regardless of his promise to Burlingame, only release the mortgage from his own property, and totally fail to perform the promise of Covillaud and Nye to Burlingame ?

That Lewis only intended to release the mortgage and not the mortgage debt, is evidenced by the following facts : 1st. The indorsement on the mortgage is peculiar—(" Satisfied by being released.")     2d. He delivered the mortgage to Covillaud, but retained the note.   3d. He indorsed as a credit on the note the $8,000 received of Covillaud.    4th. Soon after he brought suit for balance due upon note against Burlingame.   5th. The note was pasted to the mortgage and he tore it off, showing deliberate intention to keep it.   6th. Lawton, who was the witness and agent of Covillaud, did not understand that Lewis was releasing Burlingame, or giving up his claim against Burlingame for the balance of the debt.

That Covillaud understood Lewis retained his debt against Burlingame, is rendered equally certain by numerous circumstances. He knew Lewis held a note against Burlingame ; he knew it because the note had been pasted to the mortgage ; he knew it because the note is referred to in the mortgage ; he must have known that it is usual in all cases where large sums of money are secured by mortgage to give a note with the mortgage.   Yet, while he was careful

to take up the mortgage, he says never a word about the note. Covillaud did not pay the $8,000 in cash, but gave notes payable on time. He never made any objection to the payment of these notes. Surely he would have done so if he had been cheated out of the consideration.

The District Court has found this point in favor of Lewis. When this finding is sustained by such a weight of testimony, and there is such an absence of testimony on the other side, will this Court interfere with the finding of facts of the District Judge ?

III.   Admitting that Covillaud and Nye agreed with Burlingame to pay his debt to Lewis, could Lewis sue in his own name and without assignment upon that promise or undertaking of Covillaud and Nye ?   We do not deem this a material question in the case, for if Lewis originally had no right of action, Burlingame certainly did have, and he assigned that cause of action to Lewis. So that Lewis, whether he originally had a cause of action or not, certainly did have it by assignment. But we think, as the law is now settled by most if not all the modern decisions, Lewis had a right of action in his own name and without assignment. We refer the Court to the following cases :   (*Barker* v. *Bucklin*, 2 Denio, 45 ; *The Delaware & Hudson Canal Co.* v. *The Westchester County Bank*, 4 Id. 97 ; *Arnold et al.* v. *Lyman et al.*, 17 Mass. 400.)

IV.   Did the vendor's lien of Burlingame pass by his assignment to plaintiff ?

Under our statute nobody doubts the assignability of the debt itself. If the debt may be assigned why not the lien ? This Court, in the case of *Phelan* v. *Olney*, (6 Cal. 478) decided, that the assignment of note, secured by mortgage, carried with it an equitable assignment of the mortgage. The Court, also, in the case of *Ritter* v. *Stevenson*, (7 Cal. 388) expresses the opinion that the written assignment of an account, secured by a mechanic's lien, would carry the lien itself. The authorities as to whether the mere assignment of a note which was given for the purchase money of real estate carries with it the right to enforce the vendor's lien by the holder of the note, are conflicting. The Kentucky, Indiana, and some other authorities, hold that the assignee of the note has the same right to enforce the vendor's lien which the vendor him-

self had, while some other authorities hold that the mere assignment of the note does not carry with it the right to enforce the vendor's lien. But the very same authorities, or at least some of them, which held that the assignment of the note would not carry the vendor's lien, held or intimated that a special assignment of the lien by deed would entitle the assignee to enforce the lien, and we believe no single authority can be found contradicting this latter proposition where there was a real or attempted assignment of the lien. (See on this point *White* v. *Williams*, 1 Paige's Ch. 502; 7 Maryland, 132.)

COPE, J. delivered the opinion of the Court—FIELD, C. J. and NORTON, J. concurring.

Covillaud and Nye purchased of one Burlingame a lot with the improvements thereon in the city of Marysville, and as a part of the consideration assumed the payment of a mortgage upon the property, in favor of the plaintiff, for the sum of $6,000. Nye conveyed his interest in the property to Covillaud, and the latter arranged with the plaintiff for a release of his mortgage, agreeing to pay him the sum of $8,000, in two installments of $4,000 each, and to secure the payment by a mortgage on the same property. This arrangement was carried out by the execution of the notes and mortgage as agreed on, and the release of the original mortgage, but as the debt and interest due from Burlingame amounted to more than the sum for which the notes were given, the note of Burlingame was retained by the plaintiff. The amount of the Covillaud notes was credited upon it, and a suit brought against Burlingame for the balance, and a judgment recovered, and the present action is against Covillaud and Nye upon their agreement to pay off the original mortgage. The action is based upon that agreement, and upon a written assignment from Burlingame to the plaintiff of his cause of action against Covillaud and Nye, including his lien as vendor, and the plaintiff asks a judgment for the amount claimed, and a decree enforcing the lien. The case comes up on appeal from an order refusing a new trial, and from a judgment granting the relief asked, and various objections are urged as grounds of reversal.

It is objected that the agreement sued on does not bind Covillaud and Nye for the payment of the mortgage debt, and that it only amounted to an undertaking on their part to obtain a discharge of the mortgage as a lien upon the property. The intention obviously was to assume the payment of the debt, and any other construction would be inconsistent with the circumstances under which the agreement was entered into, and could not be maintained even upon the strictest interpretation of the language used. It would be absurd to hold, that an agreement to pay a mortgage is complied with by procuring a discharge of the mortgage, leaving the debt unsatisfied; and particularly where the person agreeing to pay receives the amount of the mortgage debt as the consideration for the agreement. It is clear that the objection taken cannot be sustained, and that Covillaud and Nye in assuming the payment of the mortgage, retaining for that purpose the amount of the mortgage debt, assumed and intended to assume the payment of the debt.

It is objected further, that the plaintiff cannot sue upon the agreement for want of privity, and the case of *McLaren* v. *Hutchinson* (18 Cal. 80) is relied upon in support of the objection. In that case the suit was upon an agreement made by the defendant with a third person to pay a debt owing by the latter to the plaintiff, and we held that as the plaintiff was not a party to the agreement the action could not be maintained. The decision was placed upon the ground that there was no privity, but since the case was decided the matter has frequently been called to our attention, and we are by no means satisfied with the rule laid down. The agreement was founded upon a sufficient consideration, and the modern doctrine in such cases seems to be in favor of the maintenance of the action, and we are inclined to hold the question open for further investigation. It is unnecessary to pass upon it in this case, as the assignment of the cause of action enables the plaintiff to sue as the assignee of Burlingame, and in any event the point raised is untenable. It is claimed with reference to the lien, however, that it was not assignable, being a mere personal equity in the vendor, and not transferable by him to another. This point is covered by the decision just rendered in the case of *Baum* v. *Grigsby*, and under the rule there laid down the objection is well taken.

The more important question in the case arises upon the arrangement between Covillaud and the plaintiff, this arrangement being pleaded in discharge and satisfaction of the original debt. The question, of course, is one of intention, and being purely a question of fact, we cannot interfere with the decision of the Court below, unless there is a want of evidence to sustain it, and the conclusion drawn is legally erroneous. The Court finds that the parties did not intend by the arrangement to extinguish the debt, and concludes that the effect was to release the mortgage and to pay the debt to the extent of $8,000. If the finding is correct, the conclusion can hardly be complained of, and to sustain the finding the plaintiff relies upon the fact that the note was not surrendered with the mortgage, and upon the language used in discharging the latter as a lien. The words are, " satisfied by being released," and it is claimed that these words imply the existence of a debt, and show that the intention was to discharge the lien, and hold the debt as a personal obligation. There is some plausibility in this view, and taking the circumstances together, we are of opinion that there is sufficient evidence to support the finding, or at least to render interference on our part improper. We cannot consider the matter as an original question, for to do so would be to throw off our distinctive character as an appellate Court, and assume powers which the Constitution and laws have vested elsewhere. It is possible that upon the weight of evidence we should have arrived at a conclusion different from that of the Court below, but the question for us is, whether the finding is so plainly contrary to the evidence as to raise necessarily the inference of error. So far as mere opinion is concerned the finding is conclusive, and it is clear that upon the evidence before us we cannot interfere without overstepping the bounds of our legitimate authority. There are undoubtedly some embarrassing circumstances in the case, and it may be that due weight and proper consideration were not given to these circumstances, and that the finding is not in accordance with the intention of the parties. If so, it is unfortunate that relief cannot be administered, but it is one of those misfortunes for which no remedy seems to exist, for we cannot set aside the decision of the Court below upon a difference of opinion as to the weight of evidence.

The rule is well settled that where the evidence is conflicting, or where the conclusion drawn from it is not necessarily erroneous in point of law, the decision cannot be disturbed.

Our conclusion is, that as to the lien the judgment should be reversed, but that in other respects it should be affirmed.

Ordered accordingly.