W. A. H. MILLER ET AL. v. MILES BARLER.

No. 246.—Decided February 27, 1896.

**Vendor's Lien—Assuming Vendor's Conditional Liability—Contract Construed.**

Barler, having sold a tract of land to Miller on consideration in part that the latter should assume payment of his subscription of $4000 to aid in grading a projected railway, sued to foreclose a vendor's lien for an unpaid balance of such sub-

·scription. The subscription by Barler was conditioned on performance of certain work by the railway company which, after being paid by Miller pro rata for the work done, lost its right to the balance of the subscription by failing to complete the work. Held, that Miller's contract was not to be construed as a promise to pay absolutely, but to protect Barler against liability on the subscription, and did not imply any promise to pay Barler the balance of the subscription not due to the railway company nor support a vendor's lien for such balance against the land.

ERROR to Court of Civil Appeals for Third District, in an appeal from Llano County.

The suit was brought by Barler to recover of Miller $1638, balance of a subscription of $4000 made by Barler in aid of the construction of a railway and assumed by Miller as part consideration for the purchase of certain land bought by him from Barler and on which the latter sought to foreclose a vendor's lien. Others, interested with Miller in the purchase, intervened in the suit and were thereupon made defendants, and plaintiff had judgment against all for his claim, with foreclosure of his lien, which judgment was affirmed on appeal by the Court of Civil Appeals and brought before the Supreme Court by writ of error.

*Chas. L. Lauderdale,* for plaintiffs in error.

*R. H. Ward,* for defendant in error.—The second conclusion of law found by the Court of Civil Appeals is hereby adopted as a proposition, which is, "Upon the only debatable question in the case our conclusion is that the agreement by Miller to pay Barler's railroad subscription (and which, as between Miller and the interveners the latter are bound to pay), was not a mere guaranty. The agreed price for the land was $12,000, $4000 of which Miller was to pay on the railroad subscription. It is a reasonable inference from the testimony that at the time Miller purchased the land the parties never contemplated an abandonment of the railroad enterprise or a failure to make the grade to Llano town by January 1, 1890; and therefore, treated Barler's liability on his subscription as absolute for the full amount, and provided for its payment as such. However, as the entire road was not graded within the time stipulated and as the enterprise appears to have been abandoned, Barler's liability on said subscription is less than the full amount thereof, and therefore the law implies a contract on the part of Miller and the intervenors to pay Barler the difference between the amount of his actual liability and the $4000 he subscribed; and it was for this difference that the court below rendered the judgment." Note on page 416 of 10 Am. and Eng. Enc. Law; Gage v. Lewis, 68 Ills., 617; in the matter of Negus, 7 Wend. (N. Y.), 502; Merriman v. Moore, 90 Pa. St., 78; Dean v. Walker, 107 Ills., 540; Comstock v. Smith, 26 Mich., 321; Crawford v. Edwards, 33 Mich., 358.

DENMAN, ASSOCIATE JUSTICE.—Barler by original petition sued Miller, alleging that on April 27, 1889, being the owner of the

land described in the petition, situated in Llano County, Texas,. he conveyed same to Miller "for the consideration of $12,000, paid and to be paid in instalments, as follows, viz: $5000 paid in cash down, $3000 to be paid on or before the first day of May, 1890, and the balance of $4000 to be paid as follows: that said defendant Miller assumed to pay the sum of $4000 to aid in grading the S. A. & A. P. R. R. (then in course of construction to Llano town), the same to be paid in instalments as stipulated in a power of attorney from the plaintiff and others to said defendant Miller; that the said $4000 so assumed to be paid by defendant was the amount plaintiff had subscribed and conditionally bound himself to pay for said work of grading;" that said power of attorney provided that 20 per cent of said $4000 was to be paid upon the completion of the grade of each ten miles of said railroad, and the balance, if any, upon the completion of the grade to Llano, provided it should be completed before January 1, 1890; that only ten miles was ever completed and the road was abandoned before said first of January, and but one instalment of $800 ever became due and payable by Miller; "that upon the failure and abandonment of the grade of said railroad Miller became justly indebted and liable to pay plaintiff the balance of said $4000;" that, though due and demanded, defendant has wholly failed to pay same. wherefore plaintiff prays for judgment against Miller for said sum and for foreclosure of his lien upon said land therefor and for general relief.

Miller answered by general denial, and alleged specially that he bought the land for himself, Henry Exall, F. R. Malone and F. J. Semple; that plaintiff conveyed the land to him "in consideration of $5000 cash, $3000 May 1, 1890, and said Miller assuming to pay $4000 subscribed by said plaintiff Barler to aid in grading the extension of the S. A. & A. P. R. R. to Llano," and then pleaded that he and others interested with him had made certain payments to said railway on said subscription.

Exall, Malone, Semple and Frank Field (the latter having purchased an interest from the other interveners) intervened, alleging that plaintiff "in consideration of $5000 to be paid in cash to him by Miller, who when making the contract of purchase was acting for himself, Exall, Malone and Semple, and a further sum of $3000, for which Miller should execute his note to plaintiff, retaining a vendor's lien upon said land to secure payment of said note, and for the further consideration that Miller should assume plaintiff's liability upon a certain subscription theretofore made by plaintiff for the purpose of aiding in the construction of a then proposed extension to the town of Llano of a railroad from a point near Comfort, according to and in compliance with the terms of said subscription and a certain power of attorney executed by plaintiff in favor of Miller, and in consideration that Miller should guarantee and save plaintiff harmless and pay all liability that might accrue and mature against plaintiff by virtue of said subscription, the plaintiff did sell and convey to Miller the land described in plaintiff's petition;" that in consideration of said conveyance Miller, for himself and those for whom he bought as aforesaid, assumed plaintiff's liability upon said subscription then existing and

that might thereafter accrue by virtue thereof, and not otherwise; that it was contemplated that if plaintiff should not become liable on said subscription Miller and his co-vendees should not be required to pay same; that said vendees at that time owned large quantities of land near Llano, which would have been greatly enhanced in value by the building of said road, and the fact that defendants' liability was contingent and conditional as aforesaid was a chief inducement and a material part of the consideration of their purchase and agreement to assume plaintiff's liability on such subscription; that they have paid certain sums specified upon said subscription.

Plaintiff by supplemental petition denied the allegations in the petition of intervention, except that he admitted that Miller acted for the interveners, as alleged, in purchasing, and that said interveners assumed defendant's liability to plaintiff; that said interveners by reason thereof are indebted to plaintiff in the sum of $3000, for which he seeks judgment and for foreclosure of his lien.

On the trial before the court without a jury plaintiff introduced in evidence the deed from himself to Miller, that part of the deed stating the consideration being as follows: "In consideration of the sum of $12,000 paid and secured to be paid by W. A. H. Miller as follows: $5000 cash and $3000 payable on or before the first day of May, 1890, and the said Miller assuming to pay the sum of $4000 to aid in grading the S. A. & A. P. R. R. to Llano, same to be in instalments as stipulated in power of attorney from myself and others to W. A. H. Miller," which deed retains a vendor's lien to secure said $3000 note, but makes no further or other reference to said $4000.

Plaintiff also introduced a power of attorney from himself and others to Miller, the terms of which show that the respective subscriptions of the grantors therein to aid in the grading of said railroad were payable in instalments of 20 per cent for each ten miles of grading, the balance to be paid at the completion of the grading to Llano, provided it was completed by the first of January, 1890.

Miller testified that, under the power of attorney, he made, in 1889, contracts for the grading of the railroad from Fredericksburg to Llano, 45 miles, but only 26 miles were graded; that the parties who did the grading were paid, showing payments on Barler's said subscription by himself and others of the entire amount of the $4000, excepting $1638, which was never paid; that at the time of the purchase he and the intervenors owned large quantities of real estate in and near Llano, which would have been enhanced in value by the building of such road; that Barler's price for the land was $12,000 at the time he bought, which was the consideration agreed upon; that he obtained from Barler a release for a portion of the land, informing him that $2362 of the subscription had been paid, but Barler refused to release upon his request the balance of the land "until the $4000 was paid in full," but he does not state when this release was obtained. Plaintiff testified that he had never been paid anything on account of said $4000 subscription. Plaintiff also introduced release from

himself to Miller of the vendor's lien on part of said land, reciting the payment of the $3000 note and $1000 of the $4000 subscription as the consideration.

The above is substantially all the evidence introduced. The court rendered judgment in favor of Barler against Miller and the interveners for the sum of $1981, balance unpaid on the $4000 subscription, and for a foreclosure of the vendor's lien therefor on the land described in the petition, which judgment having been affirmed by the Court of Civil Appeals, defendant and interveners have brought the cause to this court by writ of error. The only assignment of error made here which we deem it necessary to notice is to the effect that "the court erred in rendering the judgment for plaintiff, because the contract of defendant Miller to pay said $4000 sued for was only a guaranty against further liability against plaintiff on account and to the extent of $4000."

The only conclusion justified by the evidence above stated is that the obligation of Miller to pay the consideration for the land conveyed is embodied in an express contract entered into between the parties at the time of the execution of the deed. It is not necessary to the decision of the question presented by the assignment for us to determine whether the agreement or promise of Miller is in writing, or merely evidenced by the recitals contained in the deed and power of attorney referred to therein. It is sufficient to say that, whether written or verbal, his promise as shown by the evidence is express, not implied. What are the terms of that promise as far as shown by the evidence before us? The extract above given from the deed shows that the aggregate consideration was to be "$12,000 paid and secured to be paid by W. A. H. Miller." This language, if standing alone, would indicate an unconditional liability to pay the entire sum of $12,000, but it is qualified by language showing the particular intent and meaning of the parties in the use of such language in stating the aggregate consideration; for the quotation proceeds, "as follows, $5000 cash and $3000 payable on or before the first day of May, 1890, and the said Miller assuming to pay the sum of $4000 to aid in grading the S. A. & A. P. R. R. to Llano, same to be in instalments as stipulated in power of attorney from myself and others to W. A. H. Miller." This language, taken in connection with the fact that the deed contains a reservation of the vendor's lien to secure a note for the $3000, but makes no further mention of the $4000, clearly shows the intent and agreement of the parties with reference to the $12,000 to be (1) that $5000 thereof was to be paid to Barler unconditionally, for it was to be in cash at the date of the execution of the deed, and is recited to have been paid; (2) that $3000 thereof was to be paid according to the terms of a note, the date of maturity of which is recited to be May 1, 1890, and since the note is not set out in the record we may assume it was an unconditional promise to pay the $3000, but its production might have established the fact that it contained a condition that it should be paid only in the event the said railroad should be constructed to Llano by the first of January, 1890, in which event what now appears to us to

be an unconditional liability or promise on the part of Miller to pay Barler the three thousand dollars would be shown to have been a mere conditional liability, which terminated with the failure of the enterprise before that date, leaving Barler with no right whatever to demand or recover from Miller said $3000 or any part thereof; (3) that $4000 thereof was to be "paid and secured to be paid by W. A. H. Miller * * * assuming to pay" Barler's subscription to aid in grading the railroad to Llano, which subscription is shown by the power of attorney referred to, to have been not an absolute but a conditional obligation to pay $4000.

There is nothing in the evidence to warrant the conclusion that Miller agreed to do more than assume the obligation imposed upon Barler by his contract of subscription. That obligation being conditional, his agreement to pay the $4000 was, by the very terms of his express contract with Barler, likewise conditional. The express contract between Miller and Barler with reference to this $4000 having thus imposed upon Miller only a conditional liability to pay same, and that liability having been discharged in part by payment and in part by the happening of the very contingency contemplated upon the face thereof, Miller and his vendees cannot be held liable to Barler for the sum not paid, without making a new contract for the parties, without making that unconditional which they made conditional, without importing into Miller's contract of assumption a stipulation, which he might not have agreed to, that he should pay to Barler any sum or sums he might not be compelled to pay on said subscription. Nor can the judgment be supported upon the ground that the law will imply a contract on the part of Miller to pay Barler such portion of said $4000 as he was not compelled to pay in the performance of his express contract of assumption, because, (1) no contract can be implied where there is an express contract disposing of the entire subject matter, especially so where the contract sought to be implied would, as in this case, contradict the terms of the express agreement entered into between the parties; (2) such implied contract would have to be based upon the assumption that Miller agreed to pay the entire $12,000 at all events, which we have seen cannot be found from the evidence adduced, the general statement that $12,000 was the price agreed upon being entirely consistent with the express agreement between the parties with reference to the various amounts constituting that sum.

Had the contract been that Miller was to pay $12,000 at all events, $5000 cash, $3000 on or before May 1, 1890, and the remaining $4000 to be paid by Miller on Barler's subscription to the railroad, Miller would have become thereby a quasi agent or trustee of the funds, and the stipulation in reference to the payment of the $4000 would have been regarded as a mere direction by Barler and an agreement by Miller to apply Barler's funds in satisfaction of his indebtedness to a third party, which agreement, if accepted by the third party before Barler directed Miller not to pay, would under the modern rule have supported an action in favor of the third party against Miller; and in case it had not required the entire sum

of $4000 to discharge the subscription, Miller would have held the balance to the use of Barler, and the latter could have maintained an action against the former upon an implied promise to pay over same to him; but if it had taken more than $4000 to discharge the subscription, as if there had been stipulated interest or attorney's fees, etc., Miller would not have been compelled to do more than pay the $4000 thereon and legal interest if not paid at agreed date, leaving Barler to pay the balance of stipulated interest, attorney's fees, etc., called for by his contract of subscription. In such a case Miller would not have been bound by the terms of and would have had no benefit from any conditions in the subscription contract.

But in the case at bar, he having assumed the subscription contract as part of the consideration, he was in no sense the agent or trustee of Barler in discharging same, and was not carrying out any agreement to apply the funds of the latter in so doing, but was using his own funds to perform a contract, the performance of which he had assumed with its burdens and its benefits. If it required more than $4000, as in case of stipulated interest or attorney's fees or other terms in the subscription, to pay same, he would have been compelled to pay the excess; if it required less he received the benefit,—simply because he was required to do all that was necessary to comply with his contract of assumption, but nothing more.

In Lewis v. Covillaud, 21 Cal., 178, A. conveyed to B. a tract of land, the consideration expressed being $10,000, "to be paid as follows: $4000 in cash down and the balance by the assuming on the part of B. the payment of a certain mortgage" upon the property conveyed, to secure a note executed by A. in favor of C. Afterwards B. executed his note to C. for a less sum than the amount then due on said note from A. to C. and in consideration of the execution and securing of said note by B., C. released the lands from the mortgage executed by A. and credited the note executed by A. with the amount of the note executed by B., leaving a balance due on said note executed by A. to C. Afterwards A. assigned to C. all his interest in law or equity to the land together with any right of action he might have against B. to enforce specific performance of B.'s contract with A. for the payment of said mortgage. Thereupon C. sued B., claiming that the execution of the note by B. to C. was not intended as a satisfaction of C.'s debt evidenced by the original note from A. to C., but was merely for the purpose of obtaining a release of the land from the mortgage, and that plaintiff C. was entitled to recover the balance not paid on the original note from A. to C. both by reason of the agreement on the part of B. to pay said note, and also by virtue of the assignment from A. to C. of his cause of action against B. above stated, and that by reason of such assignment plaintiff C. was also entitled to enforce against the property the implied vendor's lien which existed in favor of A. to secure the performance of the contract of assumption by B. of the debt from A. to C..

B. answered, admitting the execution of the several instruments above

referred to, but denying that the effect of the agreement recited in the deed from A. to B. was to bind him to the payment of the note from A. to C. He also averred that the transaction between him and C. was intended to be and was a full satisfaction of the original note from A. to C.

Upon the trial the court below found against B. upon both grounds of defense stated in said answer and rendered judgment in favor of C. against B. for the balance due on the note from A. to C. and foreclosing the lien therefor on the property. The Supreme Court, in passing upon the case, waived the question as to whether C. could recover for the balance due on the note in his own right, and held that C. could recover by reason of the assignment to him by A. of the equitable lien held by the latter upon the property to secure the performance of B.'s contract of assumption of the note from A. to C. The court, however, gravely doubted the correctness of the finding of fact by the lower court to the effect that the transaction between B. and C. did not amount to a complete settlement of the note from A. to C. as assumed by B., and evidently were of the opinion that if the court below had so found, such settlement would have been a complete defense to C.'s suit, though B. had paid less than the full amount of the note from A. to C. in discharging same, and though C. held an assignment of all of A.'s rights against B. We think it clear from this case that, though the court was of the opinion that A. had an equitable lien upon the property to secure the performance of B.'s contract of assumption, nevertheless that A. would have had no cause of action against B. for any balance, though B. might have paid off the note from A. to C. for a much less sum than its original face. In other words, we think the court was of opinion that B. in paying off the note from A. to C. was not acting as the agent or trustee of A. in applying the latter's funds to the payment of his indebtedness, but was applying his own funds in the performance of his own contract of assumption, and that if he had complied strictly with such contract no cause of action against him would have existed, no matter how little it may have cost him to comply therewith. The only difference between this case and the one at bar is, that in one the debt assumed to be paid by the vendee was an absolute liability, while in the other the debt assumed was a conditional liability. We are unable, however, to distinguish them in principle, and are of the opinion that under the terms of the contract as shown by the evidence adduced on the trial Barler had no cause of action against Miller or his vendees, because the evidence does not show any failure on their part to comply with Miller's contract of assumption.

We have not been able to find, nor have counsel cited us to any authority supporting the judgment in this case.

We are of the opinion that the assignment of error is well taken, and therefore the judgment will be reversed and the cause remanded.

The question as to whether the recitals in the deed in regard to the consideration are the mere statement of facts, or are of a contractual nature, has not been discussed in briefs of counsel, and therefore we do

not feel called upon to determine whether parol evidence can be introduced to show a different contract or additional terms to the contract of assumption shown by the recitals of the deed. The question is discussed in the following cases: 79 Texas, 278; 26 Texas, 466; 22 N. E. Rep., 737; 32 N. E. Rep., 806; 87 Ind., 1; 50 Wis., 322 (6 N. W. Rep., 497); 108 Ind., 334 (9 N. E. Rep., 372); 110 Ind., 408 (11 N. E. Rep., 25); 20 N. E. Rep., 428; 124 Ind., 30 (24 N. E. Rep., 371); 120 Ind., 584 (22 N. E. Rep., 737); 64 Texas, 494.

*Reversed and remanded.*