THE LITTLE WOLF RIVER IMPROVEMENT COMPANY, Respondent, vs. JACKSON, Garnishee, etc., and others, Appellants, and MUELLER, Respondent.

*March 20 — April 6, 1886.*

VOLUNTARY ASSIGNMENT: GARNISHMENT. *(1) Assignment of specific fund for certain creditors: Insolvency. (2) Performance of contract assigned as collateral security: Attorney at law. (3, 4) Costs.*

1. A direction by a solvent debtor to another person to pay to certain creditors the moneys belonging to such debtor which should come to his hands under a certain contract, is not a voluntary assignment for the benefit of creditors, within the statute; and if the creditors specified assented to such arrangement their claim to the fund will take precedence of an attachment or garnishment subsequently served, even though the debtor has become insolvent. *Page v. Smith*, 24 Wis. 368, distinguished.

2. H. borrowed money of C. & Co. and assigned to them as collateral security a contract by the terms of which he was to perform work

for J. Afterwards H. abandoned said contract, and C. & Co. went on and completed the same. In an action against H., J. was summoned as garnishee and C. & Co. were impleaded. *Held*, that C. & Co. were entitled first to receive, out of the amount due from J. on said contract, the moneys advanced to H., and also payment for their services and expenses (including the services of one of said firm as an attorney at law) necessary in completing the contract.

3. A garnishee was not indebted to the principal defendant at the time of the service of the garnishee summons, but afterwards became liable to pay moneys on a contract which such defendant had assigned as collateral security. He answered, stating all the facts in his knowledge, and, an issue being made, none of the statements in his answer were found to be untrue. *Held*, that he should not be charged with costs in favor of the plaintiff.

4. But such garnishee, having accepted an order on him by the principal defendant in favor of a third person, before the commencement of the garnishment proceedings, failed, without any good reason, to pay the same, and such person was compelled to interplead in the garnishment proceedings in order to obtain payment. *Held*, that the latter might properly recover costs from the garnishee.

APPEAL from the Circuit Court for *Winnebago* County. The facts are stated in the opinion. Appeals were taken from the judgment by the plaintiff, by the garnishee, *Andrew Jackson*, and by *E. Coolidge* and *Myron Reed*, constituting the firm of Coolidge & Co.

There was a brief signed by *Geo. Lines*, attorney for *Andrew Jackson*, and *Myron Reed*, attorney for *Coolidge* and *Reed*, and the cause was argued orally on behalf of said appellants by *S. U. Pinney*. They contended, *inter alia*, that the plaintiff cannot maintain this action, because at the time of the service of garnishee process there was no indebtedness from *Jackson* to Hanscom. The contract had been assigned as collateral security, and the assignees, Coolidge & Co., had the right to receive all moneys thereon. *Union Nat. Bank v. Roberts*, 45 Wis. 373; *Plant's Mfg. Co. v. Falvey*, 20 id. 200; *N. W. Life Ins. Co. v. Germania Ins. Co.* 40 id. 446. The liability of a garnishee must exist at

the time of service, and he cannot be made liable in that proceeding by events happening thereafter.   See R. S. secs. 2759–2768; *Wood v. Wall*, 24 Wis. 647; *O'Brien v. Collins*, 124 Mass. 98; *Meacham v. McCorbitt*, 2 Met. 352; *Hancock v. Colyer*, 99 Mass. 187; *Godfrey v. Macomber*, 128 id. 188; Waples on Attach. & Garn. 197–8; *J. I. Case T. M. Co. v. Miracle*, 54 Wis. 295; *Bishop v. Young*, 17 id. 46; *Williams v. A. & K. R. Co.* 36 Me. 201; *Harris v. S. & K. R. Co.* 47 id. 298; *Harris v. Aiken*, 3 Pick. 1; *Kettle v. Harvey*, 21 Vt. 301; *Smith v. Davis*, 1 Wis. 447; *Singer v. Townsend*, 53 id. 126.   The assignment of the surplus arising from the contract for the payment of certain specified debts was not a voluntary assignment for the benefit of creditors, within the statute.   Burrill on Assignments, 21, sec. 12; *Palmer v. Mason*, 42 Mich. 146; *State Bank v. Chapelle*, 40 id. 447; *Parsell v. Thayer*, 39 id. 467; *Sharpless v. Welch*, 4 Dall. 279; *Van Winkle v. Iowa I. & S. F. Co.* 56 Iowa, 245; *Putney v. Farnham*, 27 Wis. 187; 23 N. W. Rep. 910; Waples on Attach. & Garn. 213, 214; Colebrooke on Coll. Sec. 87, 97.

The cause was submitted for the plaintiff on the brief of *John W. Hume*, and for the defendant *Mueller* on the brief of *Weisbrod, Harshaw & Nevitt*.

ORTON, J.   The plaintiff having commenced suit against the defendant Hanscom for the sum of $347.86, summoned *Andrew Jackson* as garnishee on the 26th day of June, 1883, claiming that he was indebted to the defendant, and said garnishee answered, disclosing substantially the following facts:   On the 20th day of October, 1882, the said *Jackson* entered into a contract in writing with said defendant and one Bemis, by which they were to cut, get out, and raft over 2,000,000 feet of logs from his land.   At the time of the service of the garnishee summons this contract was not completed, but had progressed so far that he had paid

them thereon $4,966.70, and had become liable to pay as garnishee two claims against them of about $800 in the aggregate, and had accepted their order on him for $345.93 in favor of one *J. M. Mueller* (and it may be as well stated here that said garnishee at that time owed the defendant nothing on said contract, as found by the court). In March, 1883, the said Bemis sold and assigned his interest in the contract to the said defendant Hanscom, and on the 3d day of May, 1883, the said Hanscom, having become indebted to Coolidge & Co., bankers, for money loaned, and desiring to borrow of them more money to be used in the completion of said contract, assigned to them his interest in the same as collateral security, and a short time thereafter he abandoned said contract, and left it to be completed by them.

. The plaintiff took issue upon the garnishee's answer disclosing these facts, and caused the said *E. Coolidge* and *Myron Reed*, composing the firm of Coolidge & Co., and the said *Mueller*, to be impleaded; and upon their answers and the evidence before the referee these further facts appeared: Soon after the said assignment, and probably on the same day, it was agreed between Hanscom and Coolidge & Co. that after the completion of said contract by them, and the payment to them of their claims out of the proceeds thereof, they should pay to certain creditors of Hanscom, in the county of Waupaca, their several claims, amounting in the aggregate to about $2,000, out of the overplus coming to him on said contract, and said creditors were notified thereof and assented thereto. The said garnishee, *Jackson*, accepted the said order to *Mueller* before he had notice of said assignment to Coolidge & Co., and had become liable as garnishee in other cases for nearly $800, which he has since paid, but he had left unpaid said order, and since then there have been paid liens on said logs of between $800 and $1,000. At the time the cause was referred, May 14, 1885,

the contract had been fully completed by said Coolidge & Co., and on failure of the said garnishee, *Jackson*, to pay the balance due thereon, by the authority and direction of said defendant Hanscom, Coolidge & Co. brought suit against said *Jackson* for the same, and, by Hanscom's direction and assent, the suit was compromised and discontinued at the costs of said Hanscom of $326.64, and on final settlement with the said *Jackson* there was found due on the contract the sum of $2,926.09, subject, however, to said order to *Mueller*. In the mean time Coolidge & Co. had contracted with other parties to get out and raft said logs in performance of said contract, and paid therefor; and it became necessary to employ an attorney at law to perform certain necessary services in and about the same, and in traveling and superintending the same, and the Honorable *Myron Reed*, being an attorney at law and one of said company, rendered such necessary and reasonable service, and paid for expenses attending the same, in all to the value of $260, for the benefit of said Coolidge & Co. and in completion of said contract, and said Coolidge & Co. paid the costs of said suit so as aforesaid compromised and settled. There was found due Coolidge & Co. for moneys so advanced the sum of $1,812.09, and *Mueller's* order, with interest, was the sum of $397.35.

The final findings and judgment of the court were (1) that the said *Myron Reed* and *E. Coolidge* be paid said costs and fees of $326.64, together with said sum of $1,812.09; (2) that said *Mueller* be paid said sum of $397.35 on said order; (3) that the plaintiffs be paid their judgment in the action of $426.64; (4) that *Mueller* recover his costs of garnishee, *Jackson;* and (5) that the plaintiff recover its costs of *Jackson*.

This statement of the case is sufficient to make intelligible the points raised on the argument of the appeal, without specially and formally noticing the various exceptions

to the findings. It will be observed that the Waupaca creditors are ignored entirely in the judgment. This may be because the fund would be found insufficient to reach them in the order of payment, but probably because the court found with the referee that the promise of Coolidge & Co. to pay them was void, as argued by the learned counsel of the respondent, on the ground that it was an illegal attempt by Hanscom to prefer creditors in making an assignment. This question will first be disposed of. It was not proved or found, and cannot be presumed, that Hanscom was insolvent at the time this promise was made, on the 3d day of May, 1883. It was found that he was insolvent on the 25th day of June, 1883, and the testimony was that he was not supposed to be insolvent on the 3d day of May. Besides this, there was no finding or proof that Hanscom had not other property besides his interest in this contract, and other creditors. He therefore stood as any other solvent person capable of directing a third person having moneys belonging to him in his hands to pay such moneys, or a part thereof, to certain of his creditors, and such third person promises to do so, and such creditors assent thereto. This would seem to be a very common and a very proper business transaction. Coolidge & Co. became bound by their undertaking, and might be held liable to its performance. It has no semblance of an assignment for the benefit of creditors, and the case of *Page v. Smith*, 24 Wis. 368, has no application to such a transaction. In that case the words "*and other creditors*" in the bill of sale are italicised and made emphatic as the test of an assignment. If this were, in any legal sense, an assignment for the benefit of creditors, it would be void because not complying with the statute, and because it preferred creditors. But by no authority cited or observed was this such an assignment. It was a verbal promise, equivalent to an accepted order drawn by a solvent person, having other creditors and other property,

upon one owing him, and nothing more. If these particular creditors had been present, and Hanscom had said to Coolidge & Co., " You pay them out of any money of mine coming into your hands from that contract," and Coolidge & Co. had promised to do so, it would seem as if no one would question the transaction; it is such a common manner of business.

*Sharpless v. Welsh*, 4 Dall. 279, distinguishes such a promise and such a direction from an assignment, and is a case in point. A. placed in the hands of B. a bill of exchange, and ordered B. to negotiate it and pay the proceeds to certain creditors, and B. promised to do so, and informed such creditors of the order. It was held to be clear that there could be no revocation of the appropriation of the fund after the creditors had notice of it and had assented to it. Under such circumstances it was held good against an attachment or garnishment subsequently served. See, also, *Palmer v. Mason*, 42 Mich. 146; *State Bank v. Chapelle*, 40 Mich. 447; and other cases cited in appellants' brief.

1. The court erred in respect to this claim upon the fund, and the Waupaca creditors should have been preferred to the plaintiff.

2. We think the circuit court also erred in rejecting the claim of Coolidge & Co. for the services and expenses of the Honorable *Myron Reed* of said firm in traveling to and fro and attending to the necessary business of completing said contract, and which were found to be worth $260. There is no more reason for allowing any other claim incurred by them necessarily and properly in and about such business than this one. It stands upon the same footing as the costs paid in said suit, and of all payments to others properly employed in the completion of the contract. This claim was honestly and necessarily incurred, and should be a charge upon the fund which the services and expenses of *Mr. Reed* as attorney at law contributed to obtain and

secure.   This, then, should be added to the claim of Coolidge & Co., to be first paid out of the fund.

3.  We think also the court erred in its judgment against *Jackson* for costs in favor of the plaintiff.   It was found that, at the time the garnishee summons was served upon him, *Jackson* owed nothing on his contract, but had overpaid Hanscom for what had been done on it.   *Jackson* made truthful answer, and disclosed all the facts within his knowledge, and appeared to be indifferent and not hostile to the claim of Hanscom or of the plaintiff.   In respect to the garnishment, he appeared as an indifferent and disinterested stakeholder of the fund, submitting to the court on the facts his liability to the several claimants.   The record, it is true, states that an issue was made upon his answer; but no fact stated in his answer was disproved, and the formal issue only served to keep the suit pending until the completion of the contract and all persons interested had interpleaded and answered at the plaintiff's instance, and there was finally no controversy as to the amount found due Hanscom or Coolidge & Co. under the contract.   It is certainly not a case where the garnishee ought to be taxed with the costs. He should rather recover his costs from the plaintiff in such a case.

4.  We think *Mueller* properly recovered his costs against *Jackson*, because there was no good reason why he did not pay his claim against Hanscom on Hanscom's order accepted by him, and *Mueller* was compelled to interplead in this action to obtain its payment.

If this fund had been large enough to satisfy all these claims, the question of the order of their payment and priority would not be difficult.   The judgment should be so modified that the claims should be paid in the following order: (1) The full claim of Coolidge & Co.   (2) The claim of *Mueller*.   (3) The claims of the Waupaca creditors named.

(4) The plaintiff's judgment.    (5) *Jackson* should recover of the plaintiff his costs.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to render judgment in accordance with this opinion.