STERLING, Respondent, vs. RYAN and another, Appellants.

*March 30 — June 20, 1888.*

*Novation: Money had and received.*

Defendants, in paying laborers on the construction of a railroad, retained the amount owing by each laborer for board, it being the understanding of all parties that the amounts so retained should be paid to the respective boarding-house keepers. *Held,* that the plaintiff, who was one of such boarding-house keepers and the assignee of the others, could recover from the defendants the amounts so retained.

APPEAL from the Circuit Court for *Rock* County.

The facts are stated in the opinion. The defendants appeal from a judgment in favor of the plaintiff.

For the appellants there was a brief by *Winans & Hyzer,* and oral argument by *Mr. John Winans.*

For the respondent there was a brief by *Butt & Graves,* attorneys, and *Ogden H. Fethers,* of counsel, and oral argument by *Mr. C. W. Graves* and *Mr. Fethers.*

The following opinion was filed April 17, 1888:

ORTON, J. The facts of this case appear to be substantially as follows: D. C. Shepard & Co., of St. Paul, Minn., were the original contractors to build sections 136–140, and sections 146–148, of the railroad of the Chicago, Burlington & Northern Railway Company, near the village of Victory, Vernon county, in this state, and in September, 1885, subcontracted said sections to the defendants; and said defendants subcontracted said sections 146–148 to one John A. Peterson in October, 1885, but he commenced upon his work in September. The contracts were all substantially alike except in the price to be paid, and each one contained such a provision that the railway company, D. C. Shepard & Co., and the defendants reserved the right to pay the

laborers on said works in order to prevent any liens therefor being placed upon the road. The work upon the last-named sections continued from the 1st of September, 1885, to the 1st of January, 1886. The laborers were chiefly transient people, and many of them foreigners, who followed railroad grading as a business, and a large force of them and many teams were employed in and about the grading and construction of the road-bed on said sections; and these laborers were boarded by different persons, residents of said village of Victory, and among whom was the plaintiff, by contract with the laborers themselves who were directly liable to pay therefor. It was the customary manner of doing business on these sections between the defendants, Peterson, the laborers, and the boarding-house keepers, that the pay-rolls were made out, under the direction of Peterson, for the work, board, and supplies of the previous month; and they contained the names of the laborers, the number of days they had worked, the rate per day, the total amount earned, deductions for board furnished, and the balance due them. The defendants then paid the laborers, or caused them to be paid, deducting their board bills so furnished, and *they* were paid to the boarding-house keepers. For the months of November and December, 1885, the laborers were paid in this way, and their board bills deducted, and the amount thereof was retained by the defendants to be paid directly to the several boarding-house keepers, at the instance of, and by an arrangement with, such laborers, in accordance with the usage and custom of the previous months. These are the bills of the said several boarding-house keepers which the plaintiff holds by assignment, together with his own, which constitute his cause of action in this case.

It is claimed on behalf of the plaintiff (1) that by virtue of such usage and custom the defendants impliedly promised and agreed to pay said bills, and thereby induced said

boarding-house keepers to board said laborers, and became liable to pay the same; and (2) that said laborers paid to said defendants, or left in their hands, the amount of said board bills, to and for the use of the said boarding-house keepers. The jury found "that there was no express agreement or promise made by the defendants to the boarding-house keepers to pay them for the board of the men for whose board this action was brought." But they also found that the defendants promised to pay the board bills of some of the men "when they made payments according to the pay-rolls." This probably means that there was an implied promise on the part of the defendants to pay to the boarding-house keepers their board bills against the laborers, which they had deducted and retained from what was due the laborers for that purpose. The jury found also that when portions of the laborers' bills for the months of November and December were paid by the defendants, the balance unpaid was to be paid to the respective persons with whom they had boarded, in satisfaction of their board; and that such was the understanding between the defendants and said laborers, and this was done with the approval of the several persons with whom they had boarded, and with their understanding that they should receive the same from the defendants. To support these findings the time-checks made out of the laborers' work, with board bills deducted and the balance receipted by the laborers, were in evidence, and in all cases the board bills were deducted to be paid directly to the boarding-house keepers. It appears also that this manner of doing business was assented to by Peterson and by the defendants as well as the laborers and boarding-house keepers.

This appears to us to be a very plain case. The defendants undertook to pay the laborers, as they had a right to do under their contract with Peterson, to prevent liens on the road. They did pay the laborers in full, but only by

paying them the balance after deducting their board bills, and by agreeing to pay their board bills to the several boarding-house keepers who had boarded them. They have paid the laborers in full, or they have not. If they have not, then they ought to pay them as they have undertaken to do. They hold receipts from the laborers which answer for full payment. But they have not paid them in full. They retained what the laborers owed to the boarding-house keepers, and agreed with the laborers to pay that part of their wages directly to the boarding-house keepers, and with their assent also. Do they not withhold moneys that justly belong to the boarding-house keepers? They certainly withhold money that was virtually paid to them by the laborers to and for the use of the boarding-house keepers. ·We see no reason why such money cannot be recovered in *assumpsit*, which is an equitable action in its nature, as for money had and received, or for money paid to the use of the plaintiff. The jury found that there was an implied promise on the part of the defendants to pay these boarding-house bills when they made payments according to the pay-rolls. There was really no finding that any promise was implied by the manner of making such payments for the months of September and October, for their making payments according to the pay-rolls may as well mean the payments to the laborers for the months of November and December, deducting the board-bills.

This is our understanding of the facts of this case. It is quite different from the understanding of the facts by the learned counsel of the appellants, as appears by their briefs, but we are compelled to differ with the learned counsel both as to the facts and the law. The charge of the court to the jury in respect to any contract, express or implied by the manner in which the defendants had before paid the board bills, and excepted to by the appellants' counsel, was certainly sufficiently guarded by making such liability de-

pend upon the fact that the boarding-house keepers refused to board the laborers without such undertaking on the part of the defendants, and assented to do so only upon such an understanding. The *gravamen* of the instructions relates to the implied promise of the defendants to pay the boarding-house keepers by deducting the money due them from the bills of the laborers and retaining the same. To dispose of all possible exceptions to the charge of the court we may say that if the court had instructed the jury that the plaintiff, if the owner of the cause of action as stated in the complaint, was entitled to recover on proof of the above facts, it would have been a correct statement of the law of the case. As we have stated it, and it is believed correctly, it is a clear case of *novation*. The defendants owed the laborers more than they had paid them. The laborers owed their boarding-house keepers just that amount. The defendants, by the assent of all parties concerned, retained said amount to be paid to the boarding-house keepers, and the laborers virtually discharged their claims for labor, and receipted them to the defendants, and the boarding-house keepers discharged the laborers on such understanding. This is a valid arrangement. The defendants withhold moneys that by this arrangement belong to the boarding-house keepers, or to this plaintiff as their assignee. This is a very common business transaction.

In *Sharpless v. Welsh,* 4 Dall. 279, A. placed in the hands of B. a bill of exchange, and ordered B. to negotiate it and pay the proceeds to certain creditors of A.; and B. promised to do so, and notified the creditors of the order. This was held to be a valid novation. Similar transactions were held valid and binding upon all the parties in *Palmer v. Mason,* 42 Mich. 146, and *State Bank v. Chapelle,* 40 Mich. 447, and in *Little Wolf R. Imp. Co. v. Jackson,* 66 Wis. 42; *Drake v. Harrison,* 69 Wis. 99; *Murphy v. Hanrahan,* 50 Wis. 485; *York v. Orton,* 65 Wis. 6. The case of *Bull v.*

Sterling vs. Ryan and another.

*Brockway*, 48 Mich. 523, is almost exactly in point, and the recovery was in *assumpsit*. The case of *Schuster v. K. C., St. J. & C. B. R. Co.* 60 Mo. 290, is nearly a parallel case to this. The only difference is that the bills deducted from the laborers' pay-rolls were *merchant* bills. " An agent to collect a debt, who, with the consent of the debtor, credits it to his principal, and charges himself with it, may collect the same from such debtor." *Emerson v. Baylies*, 19 Pick. 55. " One in whose hands money is placed by a debtor for the payment of a debt is liable in an action for money had and received at the suit of the creditor to whom the money was to have been paid, and there need not be any privity between the parties or any promise to pay other than that which is implied or results from one man's having another's money which he has no right to retain." *Stoudt v. Hine*, 45 Pa. St. 30; *Brand v. Williams*, 29 Minn. 238; *Calais v. Whidden*, 64 Me. 249; *Lewis v. Sawyer*, 44 Me. 332.

But this is very familiar doctrine, and authorities need not be further cited. On the merits of the case the verdict seems to be warranted, and there are no errors in the record which affect the substantial justice of the judgment. On the facts, as we understand them, there could be no other and just result.

*By the Court.*— The judgment of the circuit court is affirmed.

A motion for a rehearing was denied June 20, 1888.