HAMILTON v. BATES et al.

No. 19,211; December 21, 1893.

35 Pac. 304.

Corporations.—Where a President of a Corporation Agrees that the corporation shall assume the debts of a person, it cannot be held liable by a creditor of such person, no corporation action with relation to the contract being shown, but it being claimed simply that money paid on the contract came into possession of the corporation.[1]

---

[1] **Cited** with approval in Standard Underground Cable Co. v. Southern Independent Telephone Co. (Tex. Civ. App.), 134 S. W. 433. The plaintiff in that case had shipped to El Paso a cable ordered by the Southern Electric & Machinery Company, whom one Mrs. Brett, who had contracted to construct the defendant's plant, etc., had made subcontractor for the work. Delivery to the latter company was suspended and plaintiff's local agent, Wiley, held it awaiting payment. Mrs. Brett had been president of a corporation, to which the defendant virtually had succeeded, although it had not gone out of existence formally, and Wiley prepared a letter, which he persuaded Mrs. Brett to sign, guaranteeing payment for the cable. Mrs. Brett signed as president and one Miller as secretary of the defendant company. The court said: "No action was taken by the directors or stockholders of the corporation in regard to the cable either before or after the letter was signed by Mrs. Brett, and there is no claim of the ratification of her acts by the corporation. No advantage was gained or profit reaped by the telephone company by reason of the execution of the contract." The judgment below adverse to the plaintiff was affirmed.

APPEAL from Superior Court, Los Angeles County; W. L. Pierce, Judge.

Action by Charles S. Hamilton against F. E. Bates and others and the Coronado Beach Company. Judgment for defendants. Plaintiff appeals. Affirmed.

J. J. Henderson and Luce & McDonald for appellant; Works & Works for respondents.

TEMPLE, C.—This appeal is from a judgment of nonsuit, rendered in favor of the defendant, the Coronado Beach Company, and was taken within sixty days after the rendition of the judgment. The action was brought to recover $2,152 for goods sold and delivered to Ben S. and Josie A. Miller. The respondent was sued upon the supposition that for a valuable consideration, paid to it by one F. E. Bates, it had promised to pay all the indebtedness of the Millers. Plaintiff claims that the contract is one made expressly for his benefit, upon which he may therefore sue, as provided in section 1559, Civil Code. Ben S. Miller and Josie A. Miller, his wife, had purchased a large amount of land from the Coronado Beach Company, for which they held contracts, the purchase money not having been paid. They had built upon the land purchased a hotel called the "Hotel Josephine." About January 27, 1888, being unable to pay their indebtedness, they entered into a verbal arrangement with Bates, who had become liable for a large amount of their indebtedness, by which Bates was to take their property and sell it, and from the proceeds pay their debts. It is a matter of dispute as to whether Bates then undertook and promised to pay all the indebtedness of the Millers. The purchase money due the respondent, for which they held the land as security, was $40,785.41. Bates had previously become responsible for about $1,900 of the Millers' debts, and they owed about $8,000 more, which are called "floating debts." The debts sued upon are a part of this floating indebtedness, for which Bates was certainly not liable prior to the arrangement with the Millers, above alluded to; and I think there is no evidence in the case upon which the court could have found that Bates then assumed such debts. Subsequently to the verbal arrangement it was

agreed that respondent should convey the title to the land to Bates, who should secure the purchase money by a mortgage to the respondent. Accordingly the deed and mortgage were executed, and at the same time an instrument in writing by all the parties, reciting the change in the relation of the corporation to the property, and wherein Bates agreed to save the respondent harmless from loss through certain claims against the property, and particularly against the attachment of the Chadbourne Furniture Company and the floating indebtedness of the Millers. Afterward, March 10, 1888, the Millers executed a release in favor of Bates, whereby they released Bates from all claims on account of the conveyance to him of said property, provided Bates should pay all their indebtedness in the county of San Diego, not exceeding in the aggregate $70,000. This was not signed by Bates, and was probably intended to release him from that part of the first verbal arrangement in which it was agreed that, in case of a surplus after payment of the debts, such surplus should be equally divided between Bates and the Millers. Before this last instrument was executed, however, to wit, February 23, 1888, Bates had become convinced that he would be unable to manage the debts of the Millers, or prevent the property from being sold under the attachments. He therefore informed Babcock, who was president and manager of the respondent, of his inability. Babcock then asked what he could do to induce the corporation to assume the indebtedness of the Millers. It was then finally arranged between Bates and Babcock, acting as president and manager of respondent, that Bates would pay to respondent $15,000, and hold the property for the Beach Company, or convey it to anyone at request of that company; that, in case the debts were paid, the corporation should have and retain one-half of any surplus that might remain, and Bates should have the other half; in consideration of which Babcock agreed for the corporation that it would pay all the indebtedness of the Millers. Bates paid to Story, who was acting with Babcock, for the corporation, of which he was vice-president, the $15,000. This was charged to the corporation, and most of it, it is shown, was afterward paid out in the name of the corporation upon the debts of the Millers in discharge of attachments upon the property.

Respondent's counsel contend that the evidence only shows that Babcock and Story undertook and agreed to pay certain debts which were then threatening to throw the Millers into insolvency, and did not assume to pay all the debts; but, as the judgment is by nonsuit, we must assume as against it that every fact was proven in favor of plaintiff which there was any substantial evidence tending to prove. It will be presumed that the trial court considered all such facts as established, and held as matter of law that, conceding that they were proven, they did not entitle the plaintiff to judgment. Bates testified very clearly that Babcock agreed for respondent that it should assume all the debts of the Millers in San Diego county. The motion for a nonsuit was based upon seven alleged defects in the evidence. The one sustained by the court was that it was not shown that the corporation ever assumed the indebtedness. As I think this point must be sustained, it is not necessary to consider the others. The only showing in regard to the corporation in the record consists in the allegation that it is a corporation; the proof that it had sold land to the Millers; that it conveyed the title to Bates, and received a mortgage for the purchase money; that Babcock assumed to act for it as president and manager; that Story signed a receipt as its vice-president; that a payment was made in its name, and a note so indorsed; that Story was heard to say that he had paid the $15,000 to it, and the testimony of Bates that some of the Miller land had been sold, and the proceeds divided between himself and the corporation. There was no proof as to the character or purpose of the corporation, or the nature of the business in which it was engaged. There was no proof as to who were its directors or stockholders, or that Babcock or Story owned any stock except by such presumption as would arise from the fact that they assumed to act as president and vice-president. No corporate action of any kind is shown. There was, so far as the proof shows, no meeting of the board of directors or of the stockholders. There was no proof tending to show the nature or extent of the authority of the president or vice-president, or that they had been accustomed to transact business of any kind for the corporation. It is not a case where an agent had ostensible authority, as there is no evidence whatever as to what Babcock's authority was, and no facts tending to show that anyone had a right to

assume anything whatever as to the extent and scope of his authority. There is no proof that anyone was or could have been deceived upon the subject. It is not shown that the directors took any action whatever upon the matter. Perhaps, had they done so, it might be assumed that a resolution authorizing it had been passed. It is not shown in proof that there were any directors. It was not shown that the articles of incorporation—in other words, its charter—would justify such a transaction. One dealing with a corporation is bound to take notice of the limitations of its charter: Morawetz on Private Corporations, sec. 591.

It is not claimed that there is any proof of an actual ratification of the agreement made by Babcock and Story, but it is contended that the corporation has received the benefit of the contract, and cannot now repudiate its obligations. The benefits alleged to have been received are the $15,000 paid by Bates in cash; the agreement that the land should be sold, and the corporation should have one-half of the surplus; and the statement of Bates that some land had been sold, and the proceeds divided between himself and the Beach Company. · So far as the first is concerned, it seems to have been a mere matter of bookkeeping by Babcock and Story. They charged the money to·the corporation, and when it was paid out in discharge of the Miller debts the checks were drawn in the name of the corporation. It is not shown that any stockholder or director ever knew of the transaction, or that the treasurer of the corporation—if there be one—ever had the money. It is presumable that more than that sum was paid to discharge pressing Miller debts, for Bates testified that he made the arrangement with Babcock because he only had $15,000, which was not enough for that purpose. The evidence only shows that Babcock and Story paid the Chadbourne claim, which was a little more than $13,000. It was shown that the property was not sold for enough to pay the Miller debts. It was in fact sold ·to pay the purchase money. As to the statement of Bates that he had sold some land and divided the proceeds, it does not appear when he sold the land. It may have been before the arrangement with Babcock, and the money part of the $15,000. But Bates does not specify how the money was paid or to what agent of respondent he gave it. We are justified in supposing it was simply given to Babcock or Story.

But there is nothing in all this which tends to prove a ratification of the contract made by Babcock and Story. At the most, it would only tend to show that the corporation had received a benefit which it could not retain when it repudiated the contract made on its behalf. In Foulke v. Railroad Co., 51 Cal. 365, it was held that in such case the express contract is not ratified, but the corporation is liable upon an implied contract to pay for the benefit received, and the recovery must be limited to the extent of the benefit. Section 1559, Civil Code, only authorizes a person not a party to a contract to sue when it is expressly made for his benefit. He cannot sue upon an implied contract, and, if he could, in no sense would this be one made for his benefit. And then there is a total absence of proof showing that the respondent has retained any benefit from the arrangement. As the property did not sell for more than its own debt, for which it had a preferred lien, the presumption is it has nothing.

It is not necessary here to hold that a corporation may not so deal with an unauthorized contract as to be held to have become bound by its terms. We are dealing with a case in which no corporate action with reference to the contract is shown, but where it is claimed simply that money paid upon the contract has come into its possession. There is no evidence tending to show that any creditor has been induced to change his position to his injury by reason of supposed assumption of the Miller debts. Indeed, they would hardly have been justified in doing so, in view of the fact that in the code the right of the parties to the contract to rescind it at any time, at least before it has been acted upon, is expressly recognized. I think the judgment should be affirmed.

We concur: Searls, C.; Vanclief, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment appealed from is affirmed.