# COUNTY OF CUMBERLAND.

————o————

JACOB T. LEWIS *versus* CHARLES E. SAWYER.

Where one has in his hands the money of another, which he ought to pay, he is liable in an action for money had and received, although he has never seen or heard of the party who has the right of action, and when the fact is proved that he has the money, if he cannot show that he has a legal or equitable ground for retaining it, the law creates the privity and the promise; but where a debtor has placed money in the hands of another as his servant, to deliver it to his creditor in payment or part payment of his debt, he may recall it, and the servant will not be liable to the creditor therefor.

If a debtor places money which he owed his creditor, in the hands of his servant, for the purpose of discharging the debt, and the servant retains it, an action for the money may be maintained by the creditor against the servant; but if the debtor, before payment of the money by the servant, takes back the money, the servant is not liable to the creditor; and any person to whom money is paid for such purpose, is thereby the servant of the debtor; but otherwise if the money is paid to or sent by an agent of the creditor, as thereby the debtor would be discharged.

EXCEPTIONS at *Nisi Prius*, GOODENOW, J., presiding.

This was an ACTION of ASSUMPSIT upon a promissory note, payable to Levi Sawyer & Son, and by them indorsed.

Levi Sawyer, one of the defendants, deceased after the action was brought, which was thenceforward prosecuted against the other defendant, as surviving partner.

The general issue was pleaded.

The plaintiff offered the note described in the writ. The defendant objected to the reading, on the ground, that though he put the name of L. Sawyer & Son on the back of the note, the act was not within the scope of the partnership business, and because the *waiver* of demand and notice was not on the note when he indorsed it. The court over-

ruled the objection, and the note was read to the jury, without proof of the execution of the indorsement.

The judge instructed the jury, among other things, that if they found the note was fraudulently altered by Porter, and put into circulation, and he had a consciousness he had fraudulently altered it, and sent money to Sawyer for the benefit of the holder, and it was received by him, then Sawyer would be holden in this action, on the money counts, although he would not be on the note.

That if they found the waiver was placed on the note without the consent of Sawyer, and that the draft on Parker was placed in his hands by Porter, appropriated to payment of this specific note, it was not competent for the defendant and Porter, at any time afterwards, to agree that the amount of the drafts should be otherwise appropriated.

That if the note was altered without the consent of Sawyer, and Porter had put the draft on Parker into the hands of Sawyer, for the purpose of paying this note, then the right of the plaintiff would become vested in the property, and the defendant could not have appropriated it for other purposes, even with the consent of Porter.

The counsel for the defendant requested the court to instruct the jury, that if Porter, at first supposing Sawyer was liable on the note, gave him the draft on Parker, the amount of which was to be appropriated to payment of this note, it was competent for him and Sawyer to make a different appropriation of the draft before the note matured, but the court declined to give the instruction.

The jury, under the instructions of the court, returned a verdict for the plaintiff, with a special finding, that the waiver of demand and notice was put upon the note without the knowledge or consent of the defendant.

*Shepley & Dana,* counsel for the defendant.

I. The first instruction was erroneous.

If the defendant was not liable on the note, he would not be on the money counts.  The claim under the money counts

is restricted and limited to proof of the execution, &c., of this very note. The right of recovery is restricted to proof of the claim stated in the specifications. *Goding* v. *Morgan*, 37 Maine R., 419 ; *Smith* v. *Kirby*, 10 Met. R., 150.

There is a count for money had and received, without any specification; but this will not enable the plaintiff to recover of the defendant the amount of the draft, for this was originally a suit against Levi Sawyer & Son. The declaration is that *they* indorsed the note of Porter. Upon this suit their partnership property was attached, and on the death of the senior partner the suit was prosecuted against the defendant, as survivor. To obtain a judgment in such a suit the cause of action must be joint—against both partners ; and on execution issued on such a judgment the property of the *firm* attached on the original suit might be sold, though nominally, the survivor was the sole execution debtor.

A cause of action against one alone cannot be joined in a suit against two. To maintain this action the plaintiff must prove the same as he would if Levi Sawyer had not deceased. In such a suit the count for " *money had and received by said defendants*," is not supported by proof of a sum of money received by *one* of the defendants on a draft payable to his sole order, and not put into the funds of the partnership. The *allegata and probata* must conform to each other.

II. The instructions in regard to the appropriation were erroneous.

The case shows that though at one time Porter intended the proceeds of the draft should be applied to the payment of this note, that he subsequently changed this appropriation, and directed the defendant to appropriate it to the payment of other claims. This it was competent for him and the deendants to agree to do.

There is nothing to show that the plaintiff ever had any knowledge of this first intention of Porter to have the proceeds of the draft applied to the payment of this note. He does not even pretend that he ever assented to such an arrangement.

The second instruction of the presiding judge is erroneous, at any rate, in this, in not stating, both that *some* knowledge or assent of the plaintiff to the appropriation would be necessary, and that the money should have been received by Sawyer, in order to deprive Porter and Sawyer of the power to change subsequently the appropriation.

In saying that the plaintiff had a vested right in the proceeds of that draft, merely from one act of volition on the part of Porter & Sawyer, without any consideration passing from the plaintiff, or any knowledge or assent on his part, is saying too much.

Indeed, *what* right vested in the plaintiff by the some time intention of the other parties that he should receive the proceeds of that draft?

No consideration moved from him. He never ratified the act, nor had any knowledge of it till the intent was changed.

A vested right in money is the property in the money, and the plaintiff, under the instruction, could have maintained trover for it, even though he had no knowledge of its existence.

It would have been competent for him to allow the defendant to collect the draft for him, and to release the defendant from any supposed liability as indorser of the note, upon Sawyer's agreement to collect the money and pay it over. That arrangement would have given the plaintiff an interest in the draft and its proceeds, but he never assented to any such thing, and he sets up no claim in his writ to any such proceeds. There is no pretense that he looked or agreed to look to the proceeds of this draft as his property, or any additional security for the payment of the note. The whole transaction in regard to the draft was one entirely between the defendant and Porter. How long must a mere intention to appropriate a sum of money to a particular object continue, without the knowledge of the party to be benefited, before it can be changed? According to the instructions an intention cannot be instantaneously changed.

By the verdict, it seems the defendant owed nothing to

the plaintiff at the time this draft was put into his hands. Porter placed a certain fund in his hands for the benefit of the plaintiff. This the defendant received for that purpose. Then Porter decides to withdraw that sum from the purpose once intended. What right has Sawyer to *refuse* his assent?

If Porter, owing nothing to Sawyer, had placed this money in Sawyer's hands temporarily, with direction to pay it to a third person, and subsequently Porter had concluded to withdraw that sum from the defendant's hands, the defendant would not have been justified in withholding it. The plaintiff had received no knowledge of it; he had no claim on the defendant, who was, therefore, justified and legally obliged to obey Porter's instructions in the disposition of the money.

The fact, then, that Sawyer was a creditor of Porter, does not alter Porter's right to change the direction in which the money should go.

*J. Rand* and *Deans*, counsel for the plaintiff.

TENNEY, C. J. The writ was originally against the defendant and Levi Sawyer, as copartners, under the firm name of Levi Sawyer & Son. Levi Sawyer died, and the writ was amended, and the action prosecuted against Charles E. Sawyer, as surviving partner of the firm aforesaid. One count is upon a promissory note, dated December 6, 1854, payable in ninety days, to the order of Levi Sawyer & Son, for the sum of $2100, signed by S. W. Porter, and indorsed by Levi Sawyer & Son. Another count is for money had and received; and the third is a general money *count*, and under the last, it is stated, that the plaintiff will introduce the note described in the first count.

At the trial no evidence was offered, that notice was given to the indorsers of the non-payment of the note, upon a demand upon the maker at the maturity, and a refusal. But the plaintiff relied upon a written waiver of demand and notice by the indorsers upon the note; and the jury found that the words indicating the waiver were placed upon the note

without the knowledge and consent of the defendant, who was proved to have indorsed the note, in the name of the firm.

Without objection a draft of S. W. Porter, dated March 1, 1855, payable to the order of Charles E. Sawyer, in four months from date, at either of the banks in Boston, for the sum of $2100, was introduced, accompanied with the evidence that the same was delivered to the defendant for the purpose of meeting the note now in suit; and that after the money was received by him, which was about March 28, 1855, and before it is shown that the plaintiff had any knowledge of this draft, or the purpose for which it was in the hands of the defendant, Porter assented that the money received thereon should be applied to take up two other drafts of Porter, on which Levi Sawyer & Son were indorsers, amounting together to the sum of $1230,49, and the same was applied accordingly.

The note in suit not having been paid by the defendant in fulfillment of the original purpose of Porter, when he received the draft and the money thereon, this action is attempted to be maintained upon the second count in the writ. If no assent had been given by Porter to the diversion of the money, after it was received by the defendant, and he held the money as the surviving partner of Levi Sawyer & Son, an action like the present, brought after the money was so in his hands, might be maintained. The case would fall within the authorities relied upon by the plaintiff. " Whenever one man has in his hands the money of another, which he ought to pay over, he is liable to the action of money had and received, although he has never seen or heard of the party who has the right. When the fact is proved that he has the money, if he cannot show that he has a legal or equitable ground for retaining it, the law creates the privity and the promise." *Hall* v. *Marston*, 17 Mass. R., 575.

But the defendant insists, that the distinction between this case and the cases cited in its support, arising from the new direction given to the fund by the one who furnished it, ren-

ders the authorities relied upon entirely inapplicable; and that the instructions of the judge to the jury, that the receipt of the money by the defendant, for the purpose of meeting the note, created a vested right in the plaintiff, were erroneous.

We may infer from the facts of the whole case, that the maker of the note supposed at the time he delivered the draft to the defendant, that the latter was absolutely liable under the waiver upon the note, or that he would become so after its maturity, by a seasonable notice of its non-payment upon a demand upon the maker, and that he provided the draft as security for the indorsers, as well as to discharge his own debt. But under the second count, the defendant was not attempted to be charged as a party to the note, but on account of liability, arising from the receipt of the money, as a stranger to the note, which money he was equitably bound to pay.

The receipt of the draft and the money thereon by the defendant, cannot be treated as the acts of the plaintiff's agent, when the plaintiff was entirely ignorant of the facts. The defendant must be considered the servant of the maker of the note, in those acts, in the view which is presented under the exceptions. The doctrine of the instructions to the jury, touching the liability of the defendant under the second count, is, that where a debtor has placed money in the hands of another, as his servant, to deliver to his creditor in payment or part payment of his debt, it is not in the power of the debtor to recall it, so that the servant is not liable to the creditor therefor, even if the creditor, at the time of the recall, is ignorant of the transaction.

Has not the debtor, if satisfied of the unfaithfulness of his servant, after the delivery of the money to him, to be paid to his creditor, and the danger of allowing him to retain it, or for any other reason, the power to withdraw it; and when the servant surrenders it, is he equitably bound to pay the same amount to the creditor? The privity and the promise, which the law creates, is upon the ground that he actually

has the money; that the purpose for which it was delivered to him, that raises by the implication the promise that he will dispose of it according to that purpose, remains unchanged; and that he cannot show any legal or equitable ground for retaining it. Our attention has been called to no case affirming such a principle as that insisted on for the plaintiff, and we have been able to find none in our own researches. If such liability is created by operation of law, it must essentially change a common practice, with prudent men. For after one had received from a debtor a sum of money to be carried to a distant place, to be paid to his creditor, and failing to go as proposed, he could not return the money to the debtor, without being liable, in case the debt should not be paid.

The case of *Denny* v. *Lincoln, Admin'r*, 5 Mass. R., 385, is in its facts substantially similar to the one before us upon this point. Patterson, a debtor, in execution in the hands of the plaintiff, a deputy sheriff, delivered to Darling, the defendant's intestate, a sum of money equal to the amount of the execution, to indemnify him, on acconnt of his contract with the plaintiff, that Patterson should be produced at a future day, to be taken on the execution, or in default thereof, would pay the debt, if Patterson avoided, and by his consent the money was applied to other executions by Darling, in his hands, who was also a deputy sheriff. In an action for money had and received, against the defendant, as the administrator of Darling, for the amount left by Patterson, it was contended that the money so deposited by the debtor with Darling, was a voluntary payment to the plaintiff as the creditor, which could not be revoked; neither could Darling withhold it. PARSONS, C. J., in delivering the opinion of the court, says, "This position cannot be admitted, in all its extent. If a debtor should send by his own servant money which he owed to his creditor, and the servant refused to deliver it, and retained it, an action for the money might be maintained by the creditor against the servant. But if the debtor had, before payment by the servant, countermanded

Lewis *v.* Sawyer.

his orders, and received back the money from the servant, he would not be liable to an action by the creditor; and any person by whom the money was sent, would for this purpose be the servant of the debtor. It would be otherwise, if the money had been sent, not by the servant of the debtor, but by an agent of the creditor; for there the debtor would have no further control over it, and the receipt of the money by the agent of the creditor would discharge the debtor."

How far the receipt of money by the defendant as indorser on the note, or the receipt of the draft before the maturity of the note, would render him liable without demand and notice; or how far he would be liable for any balance which may have remained in his hands, after the payment of the two drafts, which were taken up, by Porter's consent, in a suit not prematurely commenced, are questions not raised by the exceptions, and no opinion is expressed.

We think the instructions touching the liability of the defendant in the equitable action of money had and received, as applied to the facts of the case, were erroneous, in their full extent, even if this action had been instituted after the receipt of the money by him, upon the draft of $2100, as the surviving partner of the firm.

But in looking at the writ, we find that it is dated March 10, 1855. This is several days prior to the receipt of the money by the defendant upon the draft of $2100, which was not payable till four months after its date. There being no money in the hands of the defendant, at the time this action was commenced, it cannot be maintained upon the second count therein.

*Exceptions sustained,*
*verdict set aside, and new trial granted.*

CUTTING, J., concurred in the result, observing that—

This case discloses in substance, the following facts: On December, 6, 1854, one S. W. Porter made his note of that date for $2100, payable to the order of Levi Sawyer & Son, in ninety days after date, which was indorsed by the latter to

the plaintiff, and is the note on which the defendant, as surviving partner of the late firm of Levi Sawyer & Son, is indorser.

Tristram G. Mitchell testified that on March 1st, 1855, (which would be some eight days before the maturity of the note,) Porter drew on one Edwin Parker in favor of the defendant for $2100, payable in four months, and that the draft was drawn and delivered to Sawyer, (the defendant,) for the purpose of meeting this $2100 note.

The defendant, (Charles E. Sawyer,) testifies that after he received the money on the draft of $2100, Porter assented to his appropriating the money received on it to the payment of two notes, (one dated July 18, 1854, for $680.49, payable in six months, and the other dated October 6, 1854, for $550 in four months, both signed by Porter, and indorsed by Levi Sawyer & Son, by whom they were paid; that he received the money on the draft, March 28, 1855, or about that time.

Now under this evidence, about which there seems to have been no controversy, the real question was, whether the defendant was legally liable as an indorser, assuming as the jury found that the words "waiving demand and notice" were placed over the signature of the defendant, without authority. And that question was or should have been this: Was it necessary, under the circumstances, in order to charge the defendant as an indorser, that he should have had due notice of a demand, and a refusal of payment? The correct solution of this question depends upon the situation of the parties at the time of the maturity of the note, to wit, on March 8, 1855, at which time the defendant held Porter's draft on Parker for the amount of the note for the express purpose of securing him against his liability as indorser, which draft was subsequently paid, and the inference consequently is, that it was responsible paper. In Edwards on Bills and Promissory Notes, 637, it is said that "the object of notice is to put the indorser on his guard and enable him to secure his indemnity from the maker or prior indorser; and where that has been fully accomplished, so that the

indorser has obtained every thing which notice was intended to enable him to obtain, he is liable without notice." And further, "If the indorser has taken full and ample security against the liability incurred by him, he is not entitled to notice." Citing *Cramer* v. *Sanford,* 4 Watts & Serg. R., 328; *Lewis* v. *Kramer,* 3 Md. R., 265; *Corney* v. *Decosta,* 1 Esp. R., 302. But this principle is too well settled to require the citation of authorities; it has become an axiom of the commercial law. Upon the defendant's own testimony, then, recognizing as he does that of Mitchell as to the reception of the draft, and its appropriation, the plaintiff was entitled to recover on his first count. But such an issue was not presented to the jury; the first count appears to have been abandoned on certain contingencies, and reliance placed onthe money counts. I concur in the opinion, that the plaintiff cannot succeed upon those counts, and that the ruling in that particular was erroneous.