[No. 18228.   Department One.—March 30, 1894.]

## CHUNG KEE ET AL., APPELLANTS, v. L. DAVIDSON ET AL., RESPONDENTS.

MINING PARTNERSHIP—OWNERSHIP OF MINE—DEED AS SECURITY—APPLICATION OF PROFITS.—No mining partnership or co-ownership exists between the owners of a mine and the holders of a deed from them, intended as security for indebtedness, where the holders of the deed are not in possession, and are interested in the work only as creditors, although it is agreed between them and the owner of the mine that all gold produced as the result of mining operations is to be received and retained by the creditors, and that the profits are to be applied toward payment of the indebtedness secured by the deed.

ID.—PAYMENT OF EXPENSES FOR WORK—TRUST—MONEY HAD AND RECEIVED.—Under a contract providing that the creditors secured by deed should receive the whole of each cleanup of the mine, and that it should be applied to the defraying of the expenses of running and working the mine, and to the payment of the indebtedness secured by the deed, the creditors so secured cannot apply the whole of the proceeds to the payment of the indebtedness to them; and although they are not personally responsible for any of the expenses further than the proceeds may be sufficient to pay them, yet, to the extent required to pay the expenses, they are trustees of the laborers employed to work the mines, and are liable to an action by them for money had and received for their use.

ID.—DISBURSING AGENCY—KNOWLEDGE OF EMPLOYMENT—PROMISE.—The creditors under such contract became the disbursing agents of the miners so far as required to defray the expenses of producing the gold, and it was not necessary that they should have known of the employment of the laborers, or should have made any express promise to pay them.

ID.—MONEY HAD AND RECEIVED—PRIVITY—IMPLIED PROMISE.—Whenever one man has in his hands the money of another which he ought to pay over, he is liable to an action for money had and received, although he has never seen or heard of the party who has the right; and when the fact is proven that he has the money, if he cannot show that he has a legal or equitable ground for retaining it, the law creates the privity and the promise.

ID.—FINDINGS—WRITTEN AGREEMENT—MISCONSTRUCTION.—Where the findings set forth a written agreement that the proceeds of the mines

should be applied to the payment of expenses, and that it was in force at the time the gold was delivered, and it appears as matter of law that the agreement related directly to the delivery and became operative thereby, a finding that there was no agreement at the time of the delivery of the gold, that the claims of the laborers should be paid, is simply a misconstruction of the written agreement and an erroneous conclusion of law.

ID.—INDEBTEDNESS—DELIVERY PURSUANT TO AGREEMENT—CONCLUSIONS OF LAW.—The agreement being in writing and before the court, whether the owners of the mine were solely indebted to the laborers, and whether the delivery was pursuant to the agreement are conclusions of law.

ID.—INTENTION OF PARTIES—CONFLICTING ORAL EVIDENCE.—Conflicting oral evidence given in relation to the way in which the agreement was intended to be or was understood, or interpreted to the parties to it, cannot affect it.

ID.—PAYMENT OF EXPENSES—CLAIMS OF LABORERS—EXTENT OF RELIEF.— Where the gold dust produced was slightly less than the expenses of producing it, and the money paid on account of expenses to others than the laborers whose claims were in suit was paid to persons not parties to the action, and most of it paid in advance of the receipt of the gold dust by the mortgage creditors, so that an accurate adjustment of the whole expenses would be impossible, judgment should be ordered in favor of the claimants for the amount applied on the mortgage indebtedness.

APPEAL from a judgment of the Superior Court of Calaveras County, and from an order denying a new trial. The facts are stated in the opinion of the court upon the first appeal, reported in 73 Cal., page 522, and in the opinion rendered upon this appeal.

*James A. Louttit*, and *Louttit, Woods & Levinsky*, for Appellants.

Defendants were mining partners. (Civ. Code, secs. 2511, 2512; *Smith* v. *Cooley*, 65 Cal. 48; *Winship* v. *Bank*, 5 Pet. 529; *Skillman* v. *Lachman*, 23 Cal. 204; 83 Am. Dec. 96.)

*Reddick & Solinsky*, and *J. C. Campbell*, for Respondents.

HAYNES, C.—This is a second appeal. The opinion of the court upon the first appeal is reported in 73 Cal. at page 522.

The complaint contained a cause of action upon each of three claims assigned to plaintiffs, and three counts

upon each cause of action.  The first trial was confined
to the first count upon each cause of action, and in-
volved the liability of defendants to them upon the con-
tract hereinafter referred to.  Upon the second trial no
evidence was given by the plaintiffs under the first
count, but they based their right to recover upon the
second and third counts of each cause of action.

The second count, after alleging the indebtedness of
the Cooks to plaintiffs' assignors upon an account stated,
alleged, in substance, that the Cooks delivered to de-
fendants L. Davidson and S. C. Peek gold dust to the
value of five thousand five hundred dollars, "it being at
the time of said delivery of gold dust to said defendants
understood and agreed by and between said defendants
A. Cook and W. Cook on the one side, and the defend-
ants L. Davidson and S. C. Peek on the other, that out
of said five thousand five hundred dollars in gold dust
the said Davidson and Peek should pay and discharge
the claim and demand of plaintiffs' assignors."

The third count was based upon the theory that the
defendants and the Cooks were mining partners, and as
such were liable for the labor in the mines for which
the indebtedness sued for accrued.

The answer of defendants raised certain issues upon
the several counts of the complaint, and these issues
were tried by the court without a jury.  Findings and
judgment went for defendants, and plaintiffs appeal from
the judgment and order denying their motion for a new
trial.

The Cooks were made defendants, and upon their
default, judgment was entered against them.

The third count may be disposed of in a few words.
There was no partnership between the respondents and
the Cooks.  It is true that if any profit resulted from
the mining operations conducted by the Cooks it was to
be received and retained by the respondents, as they
were to receive all the gold produced; but such profits
were not to be received *as profits*, but to be applied as
payment, *pro tanto*, of the prior indebtedness of the

Cooks to them.   No single feature of a partnership existed.   Respondents were not co-owners, but encumbrancers of the mines, and were not in possession, and were interested in the work done only as creditors, for advancements made and to be made, and if any profits resulted the Cooks received the whole benefit by its application to the payment of their pre-existing debt.   Of the proceeds which were not profits, but which represented the cost of production, we shall speak in another connection.

The second count proceeded upon the theory that respondents received from W. Cook and A. Cook five thousand five hundred dollars of gold dust, and that respondents agreed with the Cooks to apply it to the payment of the claims of plaintiffs' assignors.

If this state of facts is sustained by the evidence the plaintiffs should have had judgment.   Whether the findings of fact show such a case, or whether if the findings do not show such a case they are justified by the evidence, must therefore be considered.

The findings, so far as they are not excepted to, show the following facts:

1. That in December, 1881, the defendants W. and A. Cook were the owners and in possession of certain hydraulic mines, reservoirs, water ditches, tools, etc., and were then indebted to L. Davidson and S. C. Peek, and to the firm of Davidson and Peek, and for the purpose of securing said indebtedness executed a deed of all said property to L. Davidson and S. C. Peek, said deed being intended to operate as a mortgage.

2. That the Cooks continued at all the times mentioned in the case in possession of the property, and Davidson and Peek continued to hold the said deed.

3. That respondents were not at any time interested in working the mines, nor owned any property therein, and were not partners therein, or in the working thereof.

4. That on August 3, 1882, L. Davidson and S. C. Peek entered into the written contract with W. and A. Cook which is set out in plaintiffs' complaint, and that

said contract was continued in force and effect at all times mentioned in the complaint.

5, 6, 7. That W. and A. Cook continued to work said mines on their own account, and in doing so contracted with plaintiffs' assignors to furnish men to work upon the mines, and became indebted therefor to plaintiffs' assignors in the several sums alleged in the complaint, and that these claims were assigned to plaintiffs.

8. That said contracts for labor were not made with the knowledge or consent of respondents, and that respondents were not interested in the employment of the men.

9. That on August 7, 1884, the Cooks, pursuant to said written agreement, "cleaned up" from said mines the sum of five thousand dollars in gold dust, and delivered the same to L. Davidson and S. C. Peek pursuant to said agreement. The remainder of this finding is excepted to, viz : that it was never understood or agreed by Davidson and Peek, or either of them, at the time of the delivery of the gold dust, or at any other time, that the claims of plaintiffs' assignors, or any of said claims, should be paid out of said sum of five thousand five hundred dollars or out of said gold dust "before the payment of any indebtedness owing to" respondents.

10. Finds the claims were duly assigned to plaintiffs.

11. That said labor and services were rendered at the special instance and request of the Cooks and for their use and benefit, and *that said W. and A. Cook are solely indebted therefor.* (The italicized portion of this finding is specified as not supported by the evidence.)

12. This finding is to the effect that, at the time of the delivery of the gold dust, the Cooks were indebted to the respondents in a sum exceeding the value of it.

13. "That the said defendants L. Davidson and S. C. Peek, pursuant to said written agreement, applied the whole of the proceeds of said gold dust so received to the payment of said indebtedness due and owing to the said defendants L. Davidson and S. C. Peek, and defend-

ant L. Davidson, and the firm of Davidson and Peek, as far as the same would go."

The agreement set out in the complaint, and made part of the fourth finding, provides that the grantees in said deed will reconvey upon payment of all promissory notes, obligations, and accounts of indebtedness which may be owing to respondents, and further provides that the second parties, W. and A. Cook, shall have the possession and management of the mines, water ditches, etc.; that the second parties agree to clean up the flumes and undercurrents in the mines once a month, and turn over to the first parties "the entire result of each cleanup" as soon as made, in default of which they shall surrender possession to the first parties; and that "the result of each cleanup shall apply to the defraying of the expenses of running and working said mines, and the payment of said promissory notes, obligations, and accounts of indebtedness due said parties of the first part and the firm of Davidson and Peek."

This agreement did not bind the first parties thereto absolutely or unconditionally to pay the expenses incurred by W. and A. Cook in operating the mines, but did bind them to do so to the extent of the proceeds of the same turned over to them. The mere fact that the Cooks employed labor and incurred debts therefor did not give the plaintiffs the right to sue upon the contract as an agreement made expressly for their benefit, as was correctly held upon the former appeal; but the delivery to respondents of the entire proceeds of the labor of plaintiffs' assignors, pursuant to the agreement, did give a right of action. If the operations of the mine had been wholly fruitless, no obligation could have arisen on the part of respondents to pay any part of plaintiffs' claim; but to the extent to which such proceeds came to their hands they became, under said agreement, trustees for all who furnished the labor by which it was produced.

The liability of respondents does not rest solely upon the written agreement with W. and A. Cook. It did not

create a liability against respondents to pay a pre-existing debt of the Cooks to the plaintiffs. If it had done so, an action in favor of plaintiffs would have lain immediately upon the agreement. There was nothing in the hands of respondents, at the date of the agreement, belonging to the Cooks, which in equity they were bound to pay or deliver to the plaintiffs, nor was there then existing any claim in favor of plaintiffs against the Cooks to which such promise to pay could relate.

What, then, was that agreement, as read and construed in the light of the surrounding circumstances?

The Cooks were the owners of the mines, and were largely indebted to respondents. They had conveyed to Davidson and Peek all their mining property, tools, etc., as security for that indebtedness. They were still in possession and desirous of operating their mines, but were without means to do so. Respondents agreed that the mines should be worked, but required that the entire proceeds of the work should be delivered to them, in order to secure the appropriation of whatever profits might result to the payment of the then existing indebtedness. But if the Cooks should turn over to them all the gold produced, to be applied on the prior indebtedness, they would be without the means or ability to prosecute the work or pay the labor necessary to obtain the gold. Hence it was agreed that: " The result of each cleanup stipulated shall apply to the defraying of the expenses of running and working said mines, and the payment of said promissory notes, obligations, and accounts of indebtedness due said parties of the first part and the firm of Davidson and Peek."

It is contended that this agreement does not require that the proceeds of the work shall be " first applied " to the expenses, and that therefore respondents had the right to apply the proceeds to the payment of the prior indebtedness. But such construction casts a serious reflection upon both parties to the agreement. Upon the part of the Cooks, it is equivalent to saying that they were willing to employ laborers to work the mines,

and produce gold, and apply the proceeds to the payment of their prior debts to respondents which were already secured by mortgage, knowing their utter inability to pay for that labor; and, so far as respondents are concerned, such construction would make them parties to the fraud, and enable them to profit from the unrewarded labor of those whose sweat they coined into gold to cancel the debt of another.

Such construction does violence to the language they used, as well as to common honesty, and cannot be sustained.

Respondents were to attend to the payment of the working expenses. The *entire* proceeds of the working of the mines was to be immediately delivered to them, and if applied to expenses could only be so applied by them. It is true they did not become responsible for any of these expenses further than the proceeds might be sufficient to pay them; but to the extent required to pay such expenses, they were not the owners of the gold dust, but trustees to convert it into money, and pay the expenses incurred in producing it. It is money which respondents have received, and which in equity and good conscience they were not entitled to retain, and for which an action for money had and received for plaintiffs' use would lie, and the second count of the complaint, though not in the form of the common count for money had and received, states facts which show such right. The labor was performed for the Cooks, to whom the gold belonged, until it was delivered to respondents, and as it was delivered for a specified purpose, the respondents could hold it for no other purpose. They did not become the owners of it, but were under the agreement the disbursing agents of the Cooks, so far as it was required to defray the expenses of producing it. It was not necessary that respondents should have known of the employment of plaintiff's assignors, or that they should have made an express promise to pay these plaintiffs or their assignors.

In *Lewis* v. *Sawyer*, 44 Me. 337, the court, quoting

from *Hall* v. *Marston*, 17 Mass. 575, said: "Whenever one man has in his hands the money of another which he ought to pay over, he is liable to the action of money had and received, although he has never seen or heard of the party who has the right. When the fact is proved that he has the money, if he cannot show that he has a legal or equitable ground for retaining it, the law creates the privity and the promise."

In *Stoudt* v. *Hine*, 45 Pa. St. 30, it was held that one in whose hands money is placed by a debtor for the payment of a debt is liable in an action for money had and received, at the suit of the creditor to whom the payment was to have been made, and as the defendant was liable as agent rather than as surety, it was not necessary that his promise should be in writing.

In *Donkersley* v. *Levy*, 38 Mich. 54, it was held that where an employer reserved a certain amount from the wages of his employees under an arrangement by which he was to pay their grocery accounts, but did not pay the grocers, the latter had an action against him for money had and received.

In *Pope* v. *Porter*, 33 Fed. Rep. 7, the facts were that Cheney gave his promissory note for a certain sum to plaintiff, and secured the same by a chattel mortgage upon a lot of corn. The defendant bought the corn from Cheney, and agreed with him to pay the debt due Pope as part of the purchase price. Porter sold the corn, but did not pay the debt due from Cheney to Pope. Shiras, J., held that defendant was liable to Pope "for money had and received for the use and benefit of plaintiff, as well as upon the express promise to pay the debt as part of the purchase price."

The supreme court of the United States, after conceding the general rule to be that privity of contract is necessary to the maintenance of the action of *assumpsit* said: "But there are confessedly many exceptions to it. One of them, and by far the most frequent one, is the case where, under a contract between two persons, assets have come to the promisor's hands or under his

control, which in equity belong to a third party. In such a case it is held that the third person may sue in his own name. But then the suit is founded rather on the implied undertaking the law raises from the possession of the assets than on the express promise." (*Second Nat. Bank* v. *Grand Lodge*, 98 U. S. 123.)

In *McLaren* v. *Hutchinson*, 18 Cal. 80, it was held that where the defendant purchased land, and as a part of the consideration agreed to pay certain debts of the grantor, that the creditor of the grantor could not maintain an action against the grantee for want of privity. But that case was overruled in *Lewis* v. *Covillaud*, 21 Cal. 189, and the latter case was approved in *Sacramento Lumber Co.* v. *Wagner*, 67 Cal. 2)5.

The second count alleged that at the time the gold was delivered to respondents it was understood and agreed that plaintiffs' claims should be paid, whilst the latter part of the ninth finding is, it was not then, or at any time, so agreed. The fourth finding, however, states the making of the written agreement, and that it was in force at the time the gold was delivered; and, as that agreement was that the proceeds of the mines should be applied to the payment of the expenses, it related directly to the delivery, and only became operative thereby. The agreement having been incorporated in the findings, the ninth finding that there was no agreement as alleged is simply a misconstruction of the written agreement and an erroneous conclusion of law.

That part of the eleventh finding which states that W. and A. Cook are solely indebted to the plaintiffs is an erroneous conclusion of law when considered in connection with the facts stated in the other findings; and the same remark applies to that part of the thirteenth finding which says that the whole of the proceeds delivered to respondents were applied to the indebtedness of the Cooks to them " pursuant to the agreement.". The agreement being in writing, and before the court, whether the delivery was pursuant to the agreement is a conclusion of law. The conflicting oral evidence

given in relation to the way in which the agreement was intended to be, or was understood or interpreted by the parties to it, cannot affect it.

It does not appear from the pleadings or findings what the entire expense of producing this gold was, nor whether any expenses were incurred other than that of the plaintiffs; but from the evidence contained in the record it appears without any conflict that the gold dust produced was slightly less than the expense of producing it, and that one thousand seven hundred and two dollars and ninety-four cents was applied to the payment of the prior indebtedness of W. and A. Cook to the respondents. As the money paid out on account of expenses was paid to many persons who are not parties to the action, and most of it paid in advance of the receipt of the gold dust by respondents, an accurate adjustment would be impossible, and substantial justice will be done by ordering judgment for plaintiffs for the amount applied to the prior indebtedness.

We therefore advise that the judgment and order appealed from be reversed.

SEARLS, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion it is ordered that the judgment and order appealed from be reversed, and a new trial granted.

HARRISON, J., PATERSON, J., and GAROUTTE, J.

Hearing in Bank denied.