[Civ. No. 2173. Second Appellate District.—June 7, 1918.]

## D. E. FERGUSON, etc., Respondent, v. JOHN D. MARSH, Appellant.

CONTRACT — HAULING OF ROCK AND SAND — DEFAULT OF HAULERS—DEMURRAGE CHARGES—COSTS OF GASOLINE AND OIL—PRIORITY IN PAYMENT—RIGHT OF CONTRACTOR.—Under a contract for hauling rock and sand, wherein the haulers agreed to save the contractor harmless from demurrage charges, and the contractor agreed to pay for all the gasoline and lubricating oil used in the hauling, the contractor had the right, upon the default of the haulers after permitting demurrage to accrue and contracting a bill for gasoline and oil, to first retain out of the sums due the haulers the amount of the demurrage charges.

ID.—PAYMENT FOR GASOLINE AND OIL — NATURE OF CONTRACT.—Under such a contract, the agreement to pay for gasoline and oil is not a contract made expressly for the benefit of a third person, which the seller of the oil could enforce.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. E. Barber, Judge Presiding.

The facts are stated in the opinion of the court.

J. Vincent Hannon, and T. G. Dalton, for Appellant.

W. J. Hittson, for Respondent.

JAMES, J.—The judgment in this case was in favor of the plaintiff. Defendant John D. Marsh has appealed therefrom.

In the year 1913 the defendant Marsh was the contractor named in a contract made with the state of California, which provided for the construction of certain road work on a public highway in the county of Los Angeles. In the prosecution of this work it was necessary that there should be used a large quantity of rock and sand. Appellant arranged for the procurement of the rock and sand, which was to be delivered in cars at several stations in the vicinity of the highway on which the work was to be done. Appellant then contracted with three persons, Anway, Bente, and Miller, to haul the rock and sand, as it arrived at these different stations, to the places where the same might be needed. This contract last mentioned was in writing, providing that Anway, Bente, and Miller should do all the work and furnish the tools, implements, motor trucks, and labor necessary for the expeditious handling of the cars and the delivery of the rock and sand. The contract also provided that Anway, Bente, and Miller should "save said first party [appellant John D. Marsh] harmless against any demurrage charges by reason of said cars remaining unloaded upon the track after delivery, it being expressly understood and agreed that said second parties shall upon the placing of said cars by the railroad at the said stations, or either of them, immediately proceed and with all due diligence accomplish the unloading of said cars, and expeditiously and with all due diligence deliver said rock and sand on the job as hereinbefore outlined, . . ." The contract further contained the agreement that Marsh "covenants and agrees to pay for all gasoline and lubricating oil used by said second parties in the operation of the motor trucks in the performance of this contract, deducting the amounts so paid by said first party for such gasoline and lubricating oil from the said contract price, and such payment to be considered as a payment on account of said contract price, . . ." Anway and his two associates entered upon the work of unloading and hauling the rock and sand and, after proceeding with this work for some days, they ceased their labors and abandoned their contract. During the time that they had been at work under the contract they incurred a debt of more than three hundred dollars for oils and gasoline which they purchased from the plaintiff. The plaintiff, before furnishing

the majority of the merchandise to the truck owners, saw the contract as made between appellant Marsh and Anway, Bente, and Miller. Failing to receive payment from the debtors, Ferguson presented his demand to Marsh and requested payment of the same. He also presented a written order made by Anway and Miller, requesting Marsh to pay the bill. The plaintiff here testified that when he presented the order and made demand, Marsh stated that Miller and Anway owed him (Marsh) for demurrage on cars amounting to five or six hundred dollars. This witness testified that Marsh said that if there was any money left he would settle the oil and gasoline bill. The plaintiff was asked the question: "Well, he told you he had money on hand belonging to Miller and Anway?" to which he replied: "Yes, sir; five or six hundred dollars, but he was going to take that out and pay this demurrage." While no date is fixed as that upon which the order was given, or this conversation had, it seems indicated from the testimony that the bill was not presented until after Anway and his associates had ceased work under the contract. The trial judge made his findings all in favor of the plaintiff, determining that at the time the demand was made upon the appellant Marsh there was sufficient money owing from the appellant to the hauling contractors to satisfy plaintiff's demand. This finding cannot be sustained on the evidence, unless it is to be determined that Marsh, in ascertaining the amount of money due to the hauling contractors, had not the right to offset demurrage charges. This because the testimony was uncontradicted to the effect that the demurrage charges, as claimed by the railroad company and as finally paid by Marsh, more than consumed the amount which was chargeable against Marsh by the haulers for work performed. A construction of the contract which would deprive Marsh of the right to adjust the debt of Anway et al. to him in ascertaining the state of the account would be most absurd and unjust. The contract expressly and particularly covered the matter of demurrage charges in favor of Marsh. Those demurrage charges constituted a necessary and proper item of credit which Marsh was entitled to deduct from the earnings of Anway et al. No term of the contract provided that the number of cars delivered should be limited or regulated in any particular manner, but the obligation of the haulers was to expeditiously remove the rock and sand from the cars when

they arrived. The witness Miller did testify that a great many cars arrived on one day and that he could not get the cars moved. It does not appear from the contract that Marsh assumed any duty as to the moving of the cars after they arrived, or the handling of them in any way. That was a matter that the haulers had exclusively in their charge, any inconvenience in the doing of which was to be endured by them.

That term of the contract whereby Marsh agreed to pay for oil and gasoline used by the haulers may not be said to be "a contract made expressly for the benefit of a third person, . . . ," which under section 1559 of the Civil Code, may be enforced by the person in whose favor it exists. It has been repeatedly held that, while the particular party for whose benefit such a contract is made need not be named therein, it must appear by direct terms of the contract that it was made for the benefit of some particular party; and that this will not be implied from the fact that if the parties perform the contract strictly, it may operate incidentally to the benefit of the third person. (*Chung Kee* v. *Davidson,* 73 Cal. 522, [15 Pac. 100], second appeal in same case, 102 Cal. 188, [36 Pac. 519]. See, also, *Thomson* v. *Bettens,* 94 Cal. 82, [29 Pac. 336]; *Hamilton* v. *Bates,* 4 Cal. Unrep. Cas. 371, [35 Pac. 304].) In order to sustain the judgment it would be necessary to determine here, either that the contract to pay for oils and gasoline was a contract made expressly for the benefit of the plaintiff, or that when the order was presented by the plaintiff to Marsh requesting payment of the bill there was money resting to the account of the drawers of the order which Marsh would be required to pay. As a matter of law, the first proposition cannot be maintained; and, as we have indicated, the evidence was insufficient to sustain the finding of the court in the last particular. There were errors committed by the court in its rulings upon the introduction of evidence. It was incompetent for witnesses to be required to state orally what the terms of the contract were, because the same were expressed in writing and the obligations of the parties should have been ascertained from the writing itself which was very clear and explicit. Were the latter errors alone to be considered, however, it might perhaps be said upon the whole case that no prejudice resulted; hence we have given particular attention to those matters only which are most vital to a determination of the appeal. In our examination of the case we have not

had the benefit of brief or oral argument from counsel who represents the respondent.

The judgment appealed from is reversed.

Conrey, P. J., and Works, J., *pro tem.*, concurred.